Edward J. McLaughlin, J.
In each of the three subject cases it was alleged that the respondent committed an act that, if committed by an adult, would have constituted a crime. In each of the cases a verified petition was filed in Family Court pursuant to article 7 of the Family Court Act, more than two months after the alleged act was committed. Further, in each of the cases, the respondent moved for the dismissal of the petition on the grounds that the provisions of subdivision (c) of section 734 of the Family Court Act, with regard to the time within which a petition can be filed had been exceeded. However, the basis for the motion for dismissal was different in each of the cases.
I. FACTS
In the case of Edward W., it was alleged that the child committed an act on July 10, 1976 which, if committed by an adult, would have constituted the crime of assault in the third degree, a violation of section 120.00 of the Penal Law. The Youth Division of the Syracuse Police Department referred the matter to the Onondaga County Probation Department on July 21, 1976, and a petition was subsequently filed with the court on September 16, 1976. This respondent moved for the dismissal of the petition on the ground that since more than two months had elapsed between the time the Syracuse Police Department became aware that the respondent was involved in the act, and the filing of the petition, it must be dismissed since the Statute of Limitations had run.
In the matter involving Andrew N., the petition alleged that the respondent committed an act which would have constituted the crime of criminal possession of stolen property, a violation of section 165.40 of the Penal Law. The alleged violation occurred on July 14, 1976, when members of the Fayetteville Police Department went to the home of the *572 respondent and questioned him concerning a burglary. During that questioning they noticed items which fit the description of some previously reported stolen. The respondent confessed to the criminal possession of the property. However, it was not until September 20, 1976, that the Fayetteville Police Department brought the matter to the attention of the Probation Department. Subsequently, a petition was filed with the court on November 3, 1976, more than two months after the act had been committed, and accordingly, respondent moved to dismiss the petition on the ground that he was denied a speedy trial.
In the matter of Reba C., the petition alleged that the respondent had committed an act which, if committed by an adult, would have constituted the crime of assault in the second degree, a violation of section 120.05 of the Penal Law. The act was alleged to have been committed on August 25, 1976. It was referred to the Probation Department on September 9, 1976. Subsequently, on November 15, 1976, the subject petition was filed. In this case, the respondent moves that the petition be dismissed on the ground that more than two months passed between the time that the Probation Department had the matter referred to it and the filing of the petition. Therefore, respondent asserts that Family Court is barred from making a determination of the case.
In each of these cases the outcome of respondent’s motion depends on an interpretation of subdivision (c) of section 734 of the Family Court Act. That section provides, in pertinent part, as follows: "Efforts at adjustment, pursuant to rules of court under this section may not extend for a period of more than two months without leave of a judge of the court, who may extend the period for an additional sixty days.”
There are four possible ways in which to interpret the effect of the expiration of the time limitation of subdivision (c) of section 734 of the Family Court Act. It can be interpreted as a Statute of Limitations, as a speedy trial provision, as a former jeopardy provision, or as a limitation on the jurisdiction of the court over the person or matter. The court finds that the expiration of the two months’ time period provided for in the section, without court extension, removes the subject matter jurisdiction of the Family Court. The reasons for this determination are set forth below.
II. EDWARD W.; STATUTE OF LIMITATIONS
To determine the respondent’s motion in this case the court *573 must determine when the time period mandated for informal adjustment commences. The respondent contends that the initiation of the two months’ period begins on the commitment of the act, which if done by an adult, would constitute a crime, in that subdivision (c) of section 734 sets forth a Statute of Limitations provision for filing a petition under article 7 of the Family Court Act.
This court holds that section 734 is not a Statute of Limitations provision and that the period provided for informal adjustment commences upon the receipt of the referred matter by the Probation Department.
The Statute of Limitations provision under article 7 is section 714. It provides that in the case of a person alleged to be in need of supervision, the petition must be filed with the court prior to the respondent’s 18th birthday. In the case of a person alleged to be a juvenile delinquent, the section provides that it is in the court’s discretion whether or not to dismiss the petition where it has been filed after the respondent has reached his 18th birthday. (Family Ct Act, § 714, subd [b].) By leaving the dismissal of delinquency petitions in the discretion of the court, instead of mandating a specific time limitation, the Legislature failed to provide the essential element of a Statute of Limitations, which is a precisely determinable period. Accordingly, the right to the use of the Statute of Limitations defense is not available in delinquency proceedings. (People v McAllister, 77 Misc 2d 142, 144.) In the absence of a period of limitations there is no specific time period within which a delinquency petition must be brought. (Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 714; see People ex rel. Reibman v Warden of County Jail at Salem, 242 App Div 282.)
III. ANDREW N.; SPEEDY TRIAL
Respondent here maintains that he has a constitutional right to a speedy trial and further, that the Legislature enacted subdivision (c) of section 734 of the Family Court Act as the enabling section for that right. Further, respondent asserts, that since more than two months passed between the arrest of the respondent and the filing of the petition that this right was denied to him and, accordingly, the petition should be dismissed.
In order for this court to determine respondent’s motion it must initially decide whether a juvenile has a constitutional *574 right to a speedy trial. The Supreme Court of the United States has held that the protections of the due process clause of the United States Constitution (US Const, 14th Arndt, § 1) have a role to play in juvenile proceedings (McKeiver v Pennsylvania, 403 US 528; Matter of Winship, 397 US 358; Matter of Gault, 387 US 1, 13).
In the McKeiver case (supra) the Supreme Court declared that the basic requirement for application of the due process standard in juvenile proceedings, as developed by Gault (supra) and Winship (supra) is fundamental fairness. (McKeiver v Pennsylvania, supra, p 543.) In determining "fundamental fairness”, the Supreme Court adopted a balancing test between the procedural constitutional rights accorded a criminally accused with the special procedural system designed to benefit the juvenile. Where the procedural rights disrupt the special system in achieving the goals that the Legislature intended the special nature of the juvenile proceeding overcomes the application of the procedural rights applicable to criminal proceedings.
The right to a speedy trial is a constitutional right. (Klopfer v North Carolina, 386 US 213.) The right not only protects the privilege of the accused to prepare a defense and to confront adverse witnesses while their memory is fresh, but it is also meant to relieve the personal and public pressure placed on someone who has become accused. Furthermore, the right to a speedy trial promotes the public interest in the swift administration of justice, Barker v Wingo (407 US 514). All the above considerations, with the possible exception of the pressures from publicity, are applicable to the juvenile adjudicatory process. Therefore, granting juveniles the right to a speedy trial would be in accord with the criteria of "fundamental fairness”.
In applying the balancing test between the procedural due process right of a speedy trial and its effect upon the special juvenile adjudicatory process, this court concludes that the implementation of the right would affect only the timing of the start of the juvenile adjudicatory process, not its structure. Therefore, it would not disrupt the special procedural system designed to benefit the juvenile, and is, therefore, applicable to article 7 proceedings.
Having determined that the right to a speedy trial has a role to play in the juvenile justice process, the court must now consider respondent’s contention that subdivision (c) of section *575 734 of the Family Court Act prescribes the standard to be used to determine when a juvenile’s right to a speedy trial has been denied.
The right to a speedy trial, in the case of a juvenile commences either upon the filing of a petition or by the actual restraint imposed by arrest and holding to answer a charge. See United States v Marion (404 US 307, 321). The former would negate the function of section 734 as a provision to allow informal adjustment since the filing of the petition would also terminate that adjustment. (Family Ct Act, § 734, subd [a], par [ii].)
On the other hand, to permit the time period to commence on the arrest of the juvenile would result in a reduction of the time allowed for the informal adjustment and thereby weaken the symmetry of the special procedural system enacted by the Legislature.[1]
The court, therefore, rejects the respondent’s contention that subdivision (c) of section 734 of the Family Court Act, is a provision that quantifies a specific time period in which a trial must be commenced, in accord with the respondent’s constitutional right to a speedy trial. Accordingly, this court interprets section 734 of the Family Court Act, as a statute designed to create an alternative to Family Court adjudication. Its main concerns are to relieve a child from the burden of experiencing the court process and its detrimental consequences. (Juvenile Justice and Delinquency Prevention Act of 1974, § 102, subd [b], US Code, § 5602, subd [b]; Matter of Anthony J., 87 Misc 2d 34, 39.) The provision is also intended as a means to reduce the case load of the Family Court, and thereby to enable it to adjudicate more fully those matters which demand proceedings before the court. (Matter of Charles C, 83 Misc 2d 388.) This court concludes that the time periods defined in subdivision (c) of section 734 are meant to limit the amount of time which the Probation Department is allotted to informally adjust a matter. It is not a legislative standard as to what constitutes an unreasonable delay in proceeding to trial.
In the absence of an express delineation by statute of an unreasonable period of delay, the court must use a balancing of factors test between the conduct of both of the parties to determine if there has been a violation of the constitutional *576 right to a speedy trial (Barker v Wingo, 407 US 514, supra.) In the instant case, the respondent has set forth neither facts nor circumstances to indicate that he has been prejudiced by the delay before trial, other than his contention that the initial time period allotted by subdivision (c) of section 734 had been exceeded without court extension.
Therefore, in light of the respondent’s lack of demonstration that the delay was prejudicial, along with all the other circumstances, the court concludes that the respondent has not been denied his right to a speedy trial.
IV. REBA C.; REMOVAL OF JURISDICTION
This case differs from the preceding two in that more than two months had elapsed between the filing of the matter with the Probation Department and the filing of the petition presently before the court. Counsel for this respondent contends that the expiration of this time period acts either to remove personal jurisdiction over the respondent, or, in the alternative, to remove subject matter jurisdiction from the Family Court.
The claim of lack of personal jurisdiction over the respondent is based on the contention that subdivision (c) of section 734 operates as a former jeopardy provision for juveniles. As such, the time period allotted in the statute would be taken to represent more than just the time which the Probation Department is granted to informally adjust a matter. Its expiration would also be interpreted as the completion of a judicial process, consequentially barring further action against the respondent upon the matter.
However, double jeopardy attaches only after a formal adversarial proceeding (Collins v Loisel, 262 US 426; Hunter v Wade, 169 F2d 973, affd 336 US 684; People v Graham, 69 Misc 2d 670). The informal adjustment process fails to qualify as such, and therefore, the right of jeopardy does not attach after informal adjustment has been terminated (See Morrissey v Brewer, 408 US 471; People ex. rel. Calloway v Skinner, 41 AD2d 106).
The final contention of the effect of the running of the time period is that it removes the jurisdiction of the court to hear and determine the matter. The Family Court is a court of limited jurisdiction, matters can only be brought before it by the procedures provided for by the statute (NY Const, art. VI, *577 § 13, subd b; Matter of Borkowski v Borkowski, 38 AD2d 752; see Matter of Vergara v Criminal Court of City of N. Y, 59 Misc 2d 134, affd 32 AD2d 838). Thus, by providing for a period in which either informal adjustment must reach fruition or a petition must be filed under article 7 of the Family Court Act, the Legislature has provided the manner in which an article 7 petition must be brought by law. (Family Ct Act, § 734, subd [c].) Petitions filed contrary to this provision are beyond the competence of the Family Court to hear.
The court reaches this conclusion by necessity. Without such an interpretation there would be no consequence for the failure to get a court extension of informal adjustment beyond its initial period. Without a consequence, there would be no need for court action to extend the period allotted for informal adjustment. Since the Legislature specifically provided for judicial action, it must have intended that there would be a consequence for the failure to obtain a court extension. Therefore, the court finds such consequence to be that the expiration of the period allotted removes the jurisdiction of the Family Court to hear and determine the matter.
Accordingly, the motion for the dismissal of the petition involving Edward W., filed September 16, 1976, is denied. The motion for the dismissal of the petition involving Andrew N., filed November 3, 1976, is denied. The motion for the dismissal of the petition involving Reba C., filed November 15, 1976, is granted and the petition dismissed.

. See Family Court Act, § 724.