OPINION OF THE COURT
Jack J. Cannavo, J.
When this court on September 30, 1977 ruled on respondent’s motion to dismiss the petition herein, it was extremely concerned over the fact that it appeared that the Probation Department, after having received a referral from the Juvenile Aid Service, had delayed its adjustment efforts for almost four months. The court thereupon made inquiries with reference to this alleged adjustment delay with the Deputy Director in charge of the Family Court Unit of the Suffolk County Probation Department. His memorandum to the court dated October 14, 1977 with supporting documentation indicates that a referral from Juvenile Aid Service was received by the Probation Department on January 17, 1977, that immediately thereafter on January 18, 1977 a letter was sent to the juvenile and his parents inviting them to discuss the matter with the Family Court Intake Unit of the Department of Probation, that on January 26, 1977 the juvenile’s parents contacted the Department of Probation and were interviewed *129 by a probation officer, and that, when adjustment efforts failed, the Department of Probation closed its case on March 17, 1977 and requested a petition from the Juvenile Aid Service, which was precisely two months after the referral had been received. The petition from the Juvenile Aid Service was finally received by the Probation Department on April 20, 1977. It was filed with the court on April 22, 1977. Respondent still contends that more than two months passed between the time that the Probation Department received a referral of the matter and the filing of the petition.
In view of the additional facts which have been made available to the court, it will now consider respondent’s motion de novo.
In this matter it is alleged that on October 12, 1976 respondent committed acts which would constitute, if respondent had been an adult, the crime of arson, third degree, a violation of section 150.10 of the Penal Law of the State of New York.
The respondent moves for a dismissal upon the grounds that he has been denied a speedy trial in violation of his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution and CPL article 30 and CPL 170.30 (subd 1, par [e]) and further that this court lacks jurisdiction over the subject matter because of the Suffolk County Probation Department’s failure to comply with subdivision (c) of section 734 of the Family Court Act. That section, entitled "Rules of court for preliminary procedure”, provides in subdivision (c) thereof as follows: "Efforts at adjustment pursuant to rules of court under this section may not extend for a period of more than two months without leave of a judge of the court, who may extend the period for an additional sixty days”. (Emphasis supplied.)
The court file reflects that the respondent was apprehended and placed in custody on October 16, 1976 and released to guardian (parents) on the same day about one hour later. The petition herein was sworn to on October 16, 1976. Although it is not clear from the material contained in the file, the respondent’s moving papers allege that the Department of Probation delayed the adjustment procedure substantially in excess of the statutory limit of 60 days. The petition was filed with the court on April 22, 1977. Respondent appeared in court for the first time on May 13, 1977.
Citing Matter of Reba C. (89 Misc 2d 570), the respondent contends that subdivision (c) of section 734 of the Family
*130 Court Act is jurisdictional in nature and that expiration of the two-month adjustment period prior to the filing of a petition precludes a court from acquiring jurisdiction. The respondent argues that the procedure provided for by the statute must be strictly followed and "[petitions filed contrary to this provision are beyond the competency of the Family Court to hear” (Matter of Reba C., supra, p 577).
 This court finds that respondent’s contention is untenable. There is absolutely nothing in the language of section 734 or in any other section of article 7 of the Family Court Act to infer that the intent of the Legislature was to divest the Family Court of jurisdiction over the subject matter whenever a probation department permits the allotted adjustment period under subdivision (c) of section 734 to expire. The legislative history concerning section 734 is minimal. Moreover, a perusal of the applicable Legislative Reports, Legislative Memoranda, Messages of the Governor, or Governor’s Memoranda in the Session Laws of New York State since the adoption of the Family Court Act in 1961 (L 1962, ch 686; L 1975, ch 836, § 3; L 1976, ch 878, § 6) likewise fails to reveal a scintilla of evidence to support the respondent’s position. Thus, there does not appear to be anything in the circumstances surrounding the enactment of section 734 which would indicate that its language does not mean what it clearly seems to say.
Besides, to hold as respondent reasons would in effect equate subdivision (c) of section 734 of the Family Court Act with a unique kind of Statute of Limitations that would under facts as alleged in this case negate the provisions of section 714 of the Family Court Act, which provides that, "in determining the jurisdiction” in a juvenile delinquency proceeding, the court may dismiss or entertain the petition when it is filed after the respondent reaches the age of 18 and must dismiss a petition to determine whether a person is in need of supervision once the respondent reaches the age of 18. Section 714 is the only section in the Family Court Act that prescribes any sort of period of limitation in juvenile proceedings, and the fact that the period of limitation with respect to persons in need of supervision is unusually broad and jurisdiction totally discretionary regardless of time periods in the case of the juvenile delinquent who reaches the age of 18 cannot be ignored. In view of this, it is inconceivable that the Legislature intended to deprive the court of its jurisdiction thor *131 oughly even in the case where a probation department permitted a mere one-day delay beyond the 60-day adjustment period through the operation of a statute whose language concerning adjustment merely appears to be permissive rather than mandatory.
It should be noted further that "Rules of court for preliminary procedure” (italics supplied) similar in content to section 734 are also found in sections 424 and 823 of the Family Court Act. In fact the language in subdivision (c) of section 424 is exactly like that of subdivision (c) of section 734, and the only difference between subdivision (c) of section 823 and subdivision (c) of section 734 is that subdivision (c) of section 823 allows the granting of two successive extensions of time for adjustment instead of the one. In none of these sections is there any mention of the adjustment process limiting in any way the jurisdiction of the court. It would certainly be absolutely absurd to believe that in an article 4 or article 8 proceeding the court would lose jurisdiction over the subject matter if the probation department continued its adjustment efforts beyond the statutory limits.
Divestiture of jurisdiction, since that sort of liability alone, according to the case cited by respondent (Matter of Reba C., 89 Mise 2d 570, supra), could insure compliance with subdivision (c) of section 734, is a drastic consequence to impose on a court because of an agency’s failure to follow strictly preliminary procedures. Surely, the court can hold any agency or any employee thereof accountable for acts which frustrate the objects of the Family Court Act (Family Ct Act, § 255). Is it necessary therefore in these cases to try to extract from a statute a meaning that is not there and be left with a strained and tortuous interpretation of a clear and unambiguous statute? Section 734 neither specifically mentions jurisdiction nor alludes to it in any manner whatsoever and certainly does not mention the adjustment process as limiting in anyway the jurisdiction of the court.
On August 9, 1975 on approving chapter 836 of the Laws of 1975, the Governor stated: "Adjustment at intake is a useful tool in diverting young offenders from the court system, and in providing appropriate services to such youths.” (McKinney’s Session Laws of 1974, Governor’s Memorandum, p 1777.) Evidently, section 734 was intended to provide a mechanism for the adjustment of suitable cases and thus obviate the necessity of filing a petition in matters over which the court *132 ordinarily would have jurisdiction. The section was designed obviously to divert juvenile offenders to a less threatening alternative which would be free of any stigmatization. The Legislature in adopting section 734 had to be thinking in terms of delinquency prevention and the diversion of juveniles from the more coercive formal procedures which must follow the filing of a petition. This fortuitously is consonant with today’s trend on emphasizing diversion and developing more resources to divert and keep juveniles, whenever possible, away from the formal methods of the juvenile justice system. Surely, any needless interpretation of section 734 which would in any way thwart this salutary course in our juvenile proceedings should be avoided.
Finally, some consideration should be given to the victim of the delinquency act and to "the need for protection of the community” (Family Ct Act, § 711). It" seems to the court that it would be grossly unfair and unjust to lure the victim of a juvenile delinquency act into the adjustment process and then foil his right to file a petition because of the nonfeasance of a probation officer, who failed to forward the petition to the court within the prescribed time period. Would this not too ultimately be inimical to the best interest of juveniles by discouraging the injured party from committing himself/herself to adjustment and instead encourage the filing of more petitions against them?
For all of the aforesaid reasons this court sees absolutely no need to seek arcane meanings and interpretations of this clear and unambiguous statute and concludes that the expiration of the period allotted for adjustment under subdivision (c) of section 734 does not deprive the Family Court of its jurisdiction to hear and determine the matter. Respondent’s motion for dismissal on this ground is therefore denied. In view of the foregoing the issue of whether the probation department actually failed to file the petition with the court within the statutory 60-day period has become moot and no hearing is required for this determination.
In his motion respondent also contends that he is entitled to a dismissal of the petition upon the ground that he has been denied a speedy trial in violation of his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution, and further in violation of the time limitations for a speedy trial required by article 30 of the New York State Criminal Procedure Law. Respondent’s moving *133 papers, however, do not in any manner describe how respondent’s rights were violated.
Unlike many other jurisdictions, the right to a speedy trial in New York State is not governed by the State Constitution; it is legislatively decreed by CPL 30.20 (subd 1). Article 30 (CPL 30.30) also imposes time limitations within which various categories of criminal actions must be brought to trial. Thus far, neither the Federal courts nor the State appellate courts have held that all rights constitutionally and procedurally available to adults in criminal proceedings must be afforded juveniles in delinquency proceedings. In fact the United States Supreme Court has meticulously distinguished juvenile proceedings from adult criminal proceedings and has ruled, that, because of its unique nature, a "juvenile court proceeding has not yet been held to be a 'criminal prosecution’ ” (McKeiver v Pennsylvania, 403 US 528, 541). Due process does not require that all rights available to adults in criminal proceedings be made available to juveniles in delinquency proceedings, since such a blanket assertion could in some instances disrupt and frustrate the purpose of these special proceedings, which differ in significant ways from criminal proceedings (Kent v United States, 383 US 541; McKeiver v Pennsylvania, supra; Matter of D., 27 NY2d 90). Undoubtedly, the advantages and the benefits of diversion from formal court procedures through adjustment and the prompt release of juveniles following their apprehension could be jeopardized in many instances and produce a deleterious "impact” on the proceeding if an attempt were made to apply the provisions of CPL article 30 to juvenile delinquency proceedings. As yet, fortunately, the equal protection clause of the Fourteenth Amendment has not been held to apply "uniformly to juvenile proceedings.” In fact the New York State Court of Appeals in Matter of D. (supra, p 95) said "that Family Court procedure is not governed by the Code of Criminal Procedure”. Respondent’s motion that there has been a violation of CPL article 30 is therefore also accordingly dismissed.
The Family Court Act provides no specific period of limitation within which a juvenile proceeding may be commenced. Section' 714 (subd [b], par [ii]) provides merely that the court may dismiss a juvenile delinquency petition if "the proceedings were initiated after the respondent’s eighteenth birthday.” This is unfortunate because it discourages diligence *134 and often results in the filing of tardy petitions. If a petition against a juvenile is filed many months or years after the alleged offense occurred, it serves little or no value with regard to any needs the juvenile may have for treatment and rehabilitation. Section 714 of the Family Court Act is a poor statute which should be amended to provide a more precise and realistic period of limitation for the initiation of both juvenile delinquency and persons in need of supervision proceedings. The juvenile courts were designed to aid youths through the utilization of ameliorative and corrective procedures. This cannot be accomplished effectively if these juvenile matters are not handled expeditiously.
The United States Supreme Court has held that the right of a defendant to a speedy trial in a criminal case is so fundamental as to come within the aegis of the Fourteenth Amendment of the Federal Constitution (Klopfer v North Carolina, 386 US 213). The Sixth Amendment of the United States Constitution, the court said, is applicable not only to the Federal courts but also to State courts as well and that the amendment guarantees all defendants the right to a speedy trial since its provisions apply to the States through the Fourteenth Amendment. The court described the right to a speedy trial as "one of the most basic rights preserved by our Constitution” (p 226), and that it "has its roots at the very foundation of our English law heritage” (p 223). Inordinate delays between arrest or indictment and trial, the court pointed out, could seriously impair a defendant’s ability to prepare and make an effectual defense. "[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone” (Matter of Gault, 387 US 1, 13), and the court has said, juveniles are entitled to the constitutional rights and safeguards afforded adults in criminal proceedings if "fundamental fairness” requires it, and the application of such rights would not have an adverse or disruptive "impact” on the juvenile justice system (Matter of Gault, supra; McKeiver v Pennsylvania, 403 US 528, supra; Matter of Winship, 397 US 358). Certainly, the expeditious handling of a juvenile proceeding would not seriously disrupt the juvenile justice system. If anything, the speedy trial of a juvenile matter could only be beneficial to the juvenile, particularly where treatment and rehabilitation is indicated. Once the child is permitted to mature without providing corrective care, the purpose and intent of this system has been thwarted. Further, all the *135 liabilities which face an adult defendant when a trial is unduly delayed, such as the unavailability of witnesses whose memory is still fresh and the painful anxiety of facing formal court action, may also equally affect a juvenile. This court therefore must conclude that the right to a speedy trial available to an adult in a criminal proceeding is a basic constitutional right that should likewise apply to juveniles in all delinquency proceedings.
 In this case the respondent is contending that a period of seven months since his apprehension without a hearing is an undue delay and a denial of his right to a speedy trial. The respondent however has failed either to recite or demonstrate how he has been prejudiced by this delay. A mere statement by respondent that he has been denied a speedy trial and therefore has been prejudiced is not sufficient to establish that his constitutional right has been violated. He must indicate specifically by enumerating "facts or circumstances” how his defense has been impaired or the detriment that has resulted (Barker v Wingo, 407 US 514; United States v Marion, 404 US 307). Respondent herein either neglected or was unable to show prejudice by the delay. This court therefore concludes that the respondent herein was not denied his constitutional right to a speedy trial.
For all of the foregoing reasons, the court’s previous determination in denying respondent’s motion is affirmed, and the hearing is to be held as scheduled.