[L.A. No. 31856. Oct. 24, 1985.]

JOAQUIN MARIO SERNA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Philomene J. Swenson and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner and James K. Hahn, City Attorneys, Jack L. Brown and Greg Wolff, Deputy City Attorneys, for Real Party in Interest.

**OPINION**

**GRODIN, J.**—Petitioner, a defendant in a misdemeanor prosecution pending in the Municipal Court for the Los Angeles Judicial District, sought dismissal in that court on grounds that a more than four-year delay between the filing of the complaint and his arrest denied both his state and federal constitutional rights to a speedy trial. When the court denied his motion to dismiss, he sought a writ of mandate in the superior court to compel the municipal court to grant the motion. When the superior court denied his petition for writ of mandate, he sought further review in this court pursuant to Code of Civil Procedure section 904.1, subdivision (a). We granted an alternative writ to review two novel and important questions of statewide application thus presented.

The principal question concerns the time at which an accused misdemeanant's right to a speedy trial under the Sixth Amendment to the United States Constitution attaches. As we shall explain, opinions of the United States Supreme Court state, without qualification as to the level of offense charged, that the right attaches with the filing of the accusatory pleading or arrest, whichever is first. In accordance with the language and reasoning of these opinions, and with holdings by other courts, we shall conclude that when an offense is charged as a misdemeanor it is the filing of the complaint (or earlier arrest) which triggers the defendant's Sixth Amendment right to a speedy trial.

The second question of significance concerns the appropriate standard for finding an abuse of discretion in a superior court's denial of a petition for writ of mandate or prohibition filed pursuant to Code of Civil Procedure section 904.1, subdivision (a).

Before reaching either of these questions, it will be necessary to summarize the record and explain why the superior court was justified in rejecting petitioner's state constitutional speedy trial claim.

I

Although this matter is before the court on a petition for writ of mandate, in other contexts an original proceeding in which evidence may be taken and disputed factual allegations resolved by a judge or jury in appropriate circumstances (Code Civ. Proc., § 1090), the sole purpose of a petition filed in an appellate court pursuant to Code of Civil Procedure

section 904.1, subdivision (a),[1] is to afford appellate review of a superior court action granting or denying a petition for writ of mandate related to a pending municipal court action.[2] The party seeking review of the superior court action must therefore provide the reviewing court with a record adequate to permit such review. (*Sherwood* v. *Superior Court* (1979) 24 Cal.3d 183, 186 [154 Cal.Rptr. 917, 593 P.2d 862].) Because the question to be decided is whether the superior court abused its discretion or exceeded its jurisdiction in granting or denying the petition filed in that court, the review authorized by section 904.1 is limited to the record made in the superior court. We shall not, therefore, consider allegations made in this petition, return, and traverse, or exhibits thereto, which were not before the superior court whose ruling is to be reviewed.[3]

Petitioner, Joaquin Mario Serna, was charged by a misdemeanor complaint filed in the municipal court on September 29, 1978,[4] with violation

---

[1]Section 904.1: "An appeal may be taken from a superior court in the following cases: [¶] (a) From a judgment, except . . . (4) a judgment granting or denying a petition for issuance of a writ of mandamus or prohibition directed to a municipal court or a justice court or the judge or judges thereof which relates to a matter pending in the municipal or justice court. However, an appellate court may, in its discretion, review a judgment granting or denying a petition for issuance of a writ of mandamus or prohibition upon petition for an extraordinary writ."

[2]Prior to the amendment of Code of Civil Procedure section 904.1, which became effective on January 1, 1983 (Stats. 1982, ch. 1198, § 63.2, p. 4323), an appeal could be taken to the Court of Appeal from a superior court judgment granting or denying any petition for writ of mandate or prohibition. If mandate or prohibition was sought in a Court of Appeal to review an order made in a superior court proceeding, however, there could be no such appeal since review of the Court of Appeal action was available only on petition for hearing to this court. (Cal. Rules of Court, rule 28.)

The apparent purpose of the amendment was to bring review of municipal court interlocutory orders into conformity with the practice governing review of superior court orders. (*Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041, 1047 [192 Cal.Rptr. 341]; see also *Overby* v. *Municipal Court* (1981) 121 Cal.App.3d 377, 380 [175 Cal.Rptr. 352]; *Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233 [111 Cal.Rptr. 539].)

[3]The single exception is a police report submitted by the People as an exhibit to their return. Petitioner notes that this document was before the municipal court and does not object to consideration of the report by this court. The contents of the report reveal the factual basis for the pending criminal charge, and, as will be shown, are relevant to disposition of petitioner's claim that the showing of prejudice he made in the municipal court was sufficient to shift the burden to the People to justify the delay of which he complains.

Our conclusions that other matters that were not before the superior court should not and will not be considered renders moot petitioner's motion to strike the People's return or traverse allegations made therein.

[4]The date on which the complaint was filed is among the matters the People dispute in the return filed in this court. They allege that it was not filed until October 5, 1978. The discrepancy is irrelevant to any issue in this case, but we note that the forum in which such factual disputes must be resolved is the municipal court since the superior court review on petition for extraordinary writ, like appellate court review of the superior court ruling, must be on the record made below.

of Penal Code section 508,[5] embezzlement. The complaint alleged that the offense was committed on or about September 8 or September 9, 1978. Police preliminary and followup investigation reports stated that the offense occurred when petitioner failed to deposit in the station safe receipts for gasoline sold during his shift as an attendant in a service station. The owner of the business was able to determine from the records of gallonage sold during the shifts preceding and following the shift worked by petitioner that $955 had been taken in, but not deposited. Petitioner had borrowed his mother's car on September 7 and had not been seen since he completed his shift at the gasoline service station at 6 a.m. on September 9.

The reports stated that petitioner had relieved the attendant whose shift preceded his and she had read the gasoline pump meters with him at that time. The attendant who relieved petitioner did not read the meters with him because he was too busy. The safe contained recorded money drops by those two attendants, but none by petitioner.

Another notation in the reports indicated that petitioner was a prior employee who was working in his father's shift when the money was taken.

Petitioner was arrested on February 16, 1983, and promptly moved to dismiss for lack of speedy prosecution. His motion was accompanied by a declaration in which he stated that he had no knowledge of the charge prior to the date of his arrest; that he had resided with his grandmother in Los Angeles on September 8, 1978, and continued to reside with her at the same address until he moved to Montebello in December 1978. He left a forwarding address with the United States Post Office. The Montebello address had been his permanent address since that time, mail from the prior address was forwarded to him there, and his father and grandmother who lived with him at the Montebello address had known his whereabouts at all times. Petitioner also alleged that he had no independent recollection of his activities on September 8, 1978, and that persons existed who might be witnesses in his behalf but he was unaware of their names or current whereabouts. Finally, the declaration asserted that petitioner had been available for service of process at all times, had done nothing to avoid service, and had in no way caused the delay in prosecution of which he complained.

The People's opposition to the motion did not dispute the factual allegations of the motion or supporting declaration, but noted that the police report

---

[5]All future references herein to statutory provisions are to the Penal Code unless otherwise indicated.

Section 508 reads: "Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

indicated that petitioner had failed to report to work again after the end of the shift at which he had absconded with the money and was believed at that time to be en route to his grandmother's home in Florida. No evidence was taken at the hearing in the municipal court. The court denied the motion, ruling that the showing of prejudice was inadequate because the declaration lacked specificity with regard to the names of witnesses who had been but were no longer available. In the view of the judge the defendant was required to demonstrate at least who the witnesses were, why they would be witnesses, and why they were unavailable at the time of the trial. The judge noted that employment records were available that might have enabled petitioner to discover the names of persons who had worked at the station.

Although petitioner's counsel called the attention of the court to petitioner's reliance on both state and federal constitutional speedy trial guarantees, the court stated that denial of the motion was based on *People* v. *Allen* (1979) 96 Cal.App.3d 268 [158 Cal.Rptr. 54], and *Overby* v. *Municipal Court, supra,* 121 Cal.App.3d 377, impliedly concluding that the burden of demonstrating prejudice existed under both.

## II

### *California Constitution*

■ "The defendant in a criminal cause has the right to a speedy public trial. . . ." (Cal. Const., art. I, § 15.) In a misdemeanor prosecution that right attaches under the California Constitution when a criminal complaint is filed. (*Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 504 [149 Cal.Rptr. 597, 585 P.2d 219]; *People* v. *Bradford* (1976) 17 Cal.3d 8, 18 [130 Cal.Rptr. 129, 549 P.2d 1225]; *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 739 [91 Cal.Rptr. 578, 478 P.2d 10]; *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 62 [285 P. 699]; *Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507 [7 Cal.Rptr. 869].)[6] Inasmuch as this petitioner challenged only prearrest delay, not violation of statutory time limits adopted

---

[6]When *Jones* was decided article I, section 13, provided: "In criminal prosecutions in any court whatever, the party shall have the right to a speedy and public trial . . . ." Present section 15 was adopted and former section 13 repealed in the 1974 General Election in Proposition 7. The new section simplifies the language guaranteeing a speedy trial, but no intent to change the substance of prior interpretation of the right is reflected in the ballot title, legislative analyst's explanation, or the arguments for and against the measure. (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1974) pp. 26-29.)

*Jones* and *Bradford* were felony prosecutions, but they make clear the rule that the right to speedy trial attaches under the California Constitution when the person becomes an "accused," which occurs either when formal charges are filed or the person is subjected to the restraint of arrest. A misdemeanor complaint is a formal accusation. (§§ 691, subd. 4, 949.)

as legislative implementation of the state and federal constitutional speedy trial rights, the question to be decided by the trial court was whether the delay was shown to be unreasonable. Delays in arrest that are necessary for law enforcement purposes, i.e., those occasioned by inability to locate the accused or witnesses, or to conduct further investigation and gather evidence, do not violate the right to speedy trial unless the prosecution is delayed unreasonably. (*Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 740.) To determine if the delay is unreasonable and the right to speedy trial violated, "the prejudicial effect of the delay on [the accused] must be weighed against any justification for the delay." (*Ibid.*)

■ Under recent decisions of this court, the initial burden in establishing a violation of article I, section 15, is on the defendant seeking dismissal who must demonstrate prejudice attributable to the delay in arrest. (*Crockett* v. *Superior Court* (1975) 14 Cal.3d 433 [121 Cal.Rptr. 457, 535 P.2d 321].) Only after he has done so must the court determine if the delay was justified and engage in the balancing process. (*Scherling* v. *Superior Court, supra,* 22 Cal.3d 493, 505-507.)

There is much force in the observation of the Chief Justice that these and other recent decisions accepting this interpretation and application of article I, section 15, appear to have departed from the assumption that the right to speedy trial guaranteed by article I, section 15, is coextensive with that of the Sixth Amendment. Nonetheless, the *Crockett* decision postdates *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], in which the Supreme Court held that the Sixth Amendment requires that the balancing process must be undertaken in any case in which a postaccusation delay in prosecution has become presumptively prejudicial. This court was aware of that interpretation of the demands of the Sixth Amendment when *Crockett* was decided. (*Crockett* v. *Superior Court, supra,* 14 Cal.3d 433, 440, fn. 8.) We nonetheless held that the initial burden of showing prejudice is on the accused under article I, section 13, and did not question that rule when we subsequently imposed the same burden on an accused seeking relief on due process grounds for precomplaint delays. "[R]egardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (*Scherling* v. *Superior Court, supra,* 22 Cal.3d 493, 505.)

The parties have not challenged this interpretation of the speedy trial right guaranteed by article I, section 13, in this case. We have no occasion therefore to consider whether *Crockett* and the several other opinions in which this rule has been stated were correctly decided. The question was neither

briefed nor argued. Our analysis assumes the applicability of the *Crockett-Scherling* prejudice requirement to the disposition of this case.

Although a lengthy delay, such as that which occurred here, may permit an inference of prejudice since memories fade and witnesses disappear, this is not invariably so. We look therefore to determine whether the accused has demonstrated actual prejudice from a prearrest delay. Petitioner here undertook to meet his burden by urging only "inherent" prejudice in the four-and-one-half-year delay, and by his declaration in which he stated: "I have no independent recollection of my activities on September 8, 1978. . . . [P]ersons exist who might be witnesses in my behalf, . . . at this time I am unaware of the full names or current whereabouts of these people." The trial court judge concluded that in the circumstances of this case this conclusory assertion of inability to recall the events of September 8 or to recall the names of witnesses was insufficient to permit a finding of prejudice. As a result the People were not called upon to justify the delay.

We agree that petitioner's declaration was insufficient to support a finding of prejudice. The declaration reflected no effort whatsoever by petitioner to refresh recollection and omitted any reference to the incident underlying the charge as described in the police reports. The reports recite the facts on which the charge was based and set forth the names of potential witnesses. If petitioner is the suspect described in the reports a court could properly conclude that the minimal effort of reading the reports in an attempt to refresh his memory would not be an unreasonable burden. If he is not the suspect, the court could expect at least an assertion that he had no recall of, or had not been employed at, the gasoline station at which the embezzlement allegedly occurred.

We cannot, and do not, suggest that a judge may not believe a defendant's declaration or testimony that he has no recall of events occurring many months earlier. The court need not do so, however, and even if the assertion is believed, the court need not accept a conclusory statement that the lack of recall demonstrates prejudice where no effort has been made to ascertain the basis for the charge. Lack of recall may establish prejudice, but only on a showing that the memory loss persists after reasonable attempts to refresh recollection. "The showing of actual prejudice which the law requires must be supported by particular facts and not . . . by bare conclusionary statements." (*Crockett* v. *Superior Court, supra,* 14 Cal.3d 433, 442.)

To the extent that the denial of the motion to dismiss was based on a conclusion that petitioner had not demonstrated a cognizable violation of the right to speedy trial guaranteed by article I, section 15, of the California

Constitution, we find no error. We therefore conclude that the superior court did not abuse its discretion in denying the petition for writ of mandate and prohibition on this ground.

### III

### *Constitution of the United States*

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." (U.S. Const., 6th Amend.)

Because the right to a speedy trial is personal and is waived if not properly asserted by a defendant, it has been said that it is not a "favored" right. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 148 [32 Cal.Rptr. 44, 383 P.2d 452].) Nonetheless, when asserted it is as "fundamental as any of the rights secured by the Sixth Amendment." (*Klopfer* v. *North Carolina* (1967) 386 U.S. 213, 223 [18 L.Ed.2d 1, 8, 87 S.Ct. 988]; *Barker* v. *Wingo, supra,* 407 U.S. 514, 515 [33 L.Ed.2d 101, 108].) ■ It protects a criminal defendant against oppressive pretrial incarceration, anxiety, concern, and disruption of his everyday life. (*Barker* v. *Wingo, supra,* 407 U.S. 514, 532 [33 L.Ed.2d 101, 118].) Delays leading to the initiation of formal proceedings may also prejudice the defendant in his ability to defend, for the same reason as delays thereafter—death or disappearance of witnesses, fading memories, and destruction of evidence—but those delays do not violate the Sixth Amendment right to speedy trial, which attaches only upon the filing of an accusatory pleading. Formal charges must be pending. (*United States* v. *MacDonald* (1982) 456 U.S. 1, 7 [71 L.Ed.2d 696, 703, 102 S.Ct. 1497].) Prearrest delay may give rise to a due process claim, but only delay following formal accusation or delay subsequent to arrest are considered in evaluating a claim under the Sixth Amendment speedy trial clause. (*Ibid.*)

In *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455], the United States Supreme Court explained the purposes of the speedy trial guarantee and, in so doing, referred to filing of an information or indictment as the triggering events, stating: "Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These considerations were sub-

stantial underpinnings for the decision in *Klopfer* v. *North Carolina, supra;* see also *Smith* v. *Hooey,* 393 U.S. 374, 377-378 (1969). So viewed, it is readily understandable that *it is either a formal indictment or information* or else the actual *restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.*" (404 U.S. at p. 320 [30 L.Ed.2d at pp. 478-479], italics added.)

 When a delay in bringing a defendant to trial after the filing of formal charges has become presumptively prejudicial, and the defendant seeks dismissal of the charges on grounds that his Sixth Amendment right to a speedy trial has been violated, the court must balance the relevant factors—the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant—in assessing whether the delay has deprived the defendant of that right. (*Barker* v. *Wingo, supra,* 407 U.S. 514, 530 [33 L.Ed.2d 101, 117].) The defendant need not establish actual prejudice as a prerequisite to a hearing at which evidence relevant to this balancing process is heard. (*Moore* v. *Arizona* (1973) 414 U.S. 25, 26 [38 L.Ed.2d 183, 185-186].)

Therefore, if a misdemeanor complaint also triggers Sixth Amendment protections a defendant seeking dismissal on grounds that his right to speedy trial has been violated need not demonstrate actual prejudice as a prerequuisite to judicial consideration of his claim.

 Petitioner here contends that the four-and-one-half-year delay in arresting him following the filing of the misdemeanor complaint is presumptively prejudicial and thus the trial court must assume some inherent prejudice and engage in this weighing process, putting the People to the burden of justifying the delay by showing that legitimate law enforcement concerns caused or contributed to the delay.

We agree that the delay here was presumptively prejudicial. The length of the delay between the filing of the complaint and the arrest of defendant far exceeded the one-year limitation period applicable to misdemeanors generally. Had there been no complaint on file this prosecution would have been statutorily barred. Statutes of limitation reflect a legislative construction of the speedy trial guarantee. (*Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 812 [51 Cal.Rptr. 921, 415 P.2d 809].) Although the period of limitation for some misdemeanors which might have been charged as felonies is now three years (see § 805), the one-year period of limitation for "any misdemeanor" was part of the Penal Code on its adoption in 1872. (See former § 801.) A court may appropriately conclude that delays between the filing of a complaint and the arrest of a defendant which

exceeds the typical one-year period of limitation generally applicable to misdemeanors are unreasonable and thus presumptively prejudicial within the contemplation of the speedy trial guarantee. "[T]he concept of a period of limitation developed in recognition of the ever increasing difficulty faced by both the government and a criminal defendant in obtaining reliable evidence (or any evidence at all) as time passes following the commisssion of a crime . . . . [¶] Other policy considerations which underlie the concept of a period of limitation vary in purpose. The possibility of self-reformation by the criminal offender may lessen the need for society to impose corrective sanctions and society's impulse for retribution may correspondingly diminish as time passes. . . . Finally, adoption of a period of limitation represents a legislative recognition that for all but the most serious of offenses (such as murder or kidnaping) a never-ending threat of prosecution is more detrimental to the functioning of a civilized society than it is beneficial." (*People* v. *Zamora* (1976) 18 Cal.3d 538, 546-547 [134 Cal.Rptr. 784, 557 P.2d 75].) It would be anomalous in light of the congruent objectives of the speedy trial guarantee and the legislatively adopted one-year period of limitation that has governed misdemeanors for over a century if, after a decision has been made to prosecute an offense as a misdemeanor, the mere filing of a misdemeanor complaint without further action by the state for a period in excess of one year were not presumed to be a violation of the right to a speedy trial, and the People compelled to justify the delay.

■ Our conclusion that a delay between the filing of a misdemeanor complaint and the arrest and prosecution of a defendant which exceeds one year is unreasonable and presumptively prejudicial is virtually compelled by prior decisions of this court. In *Harris* v. *Municipal Court* (1930) 209 Cal. 55 [285 P. 699], we noted that section 1382, which required dismissal of a felony information if the defendant had not been brought to trial within 60 days unless good cause for the delay was shown was a legislative determination that a trial after that unjustified delay was not a speedy trial, and we extended to misdemeanants the same reasoning even in the absence of a statutory requirement of dismissal. In that case, in which the delay between the filing of the complaint and the arrest of the defendant was 18 months, we stated: "It would be most unreasonable to hold that a delay of eighteen months in the trial of the action was not in violation of the constitutional right to a speedy trial when . . . the petitioner was at all times available for the service of process and that the delay was not at all traceable to him." (209 Cal. at pp. 62-63.) In a companion misdemeanor case, *Gutterman* v. *Municipal Court* (1930) 209 Cal. 65 [285 P. 703], again the complaint had been filed some 18 months prior to the arrest of the defendant, and again this court ordered dismissal because the People failed to show good cause for the delay. In each case the delay was considered unreasonable and thus

prejudice was presumed with dismissal being constitutionally compelled in the absence of a demonstration of good cause for the delay.

■ The measuring period utilized by the court in *Harris* and *Gutterman* was the 60-day period mandated by the Legislature for felony prosecutions. The Legislature has since amended section 1382, which now reflects a legislative determination that dismissal is not required unless there is a delay in excess of 45 days between arraignment and trial or 30 days if the defendant is in custody. Although this manifests a legislative conclusion that the delay between the filing of the complaint and arraignment should not be considered in determining if a delay in bringing a misdemeanor defendant to trial is unreasonable, the one-year period of the generally applicable misdemeanor statute of limitations remains as a touchstone for measuring the reasonableness of a delay between complaint and arrest. If a delay of one year in charging a misdemeanor defendant is so unreasonable that prosecution is statutorily barred, it follows that a delay of similar duration must be considered unreasonable and presumptively prejudicial within the contemplation of the Sixth Amendment when, although a complaint has been filed, the defendant is not arrested and arraigned on the complaint for that period.

Therefore, although there may be cases in which a defendant is able to demonstrate actual prejudice from delays of shorter duration, he need not do so when the delay exceeds one year. Delays of that magnitude are presumptively prejudicial.

■ The People do not contend that the delay which occurred in this case was not presumptively prejudicial. They argue instead that the delay here is not subject to consideration as a Sixth Amendment violation at all. In support of this argument they suggest that a misdemeanor complaint is not the kind of accusatory pleading which triggers Sixth Amendment rights upon filing, basing this claim on the language used by the Supreme Court in *Marion*. We therefore address the crucial question of when the right to speedy trial attaches in misdemeanor cases.

The People do not dispute the proposition that a misdemeanor complaint is a formal accusation. Indeed, in a misdemeanor prosecution, it is the only formal accusatory pleading filed with the court. Without it the trial jurisdiction of the court has not been invoked. (*City of San Diego* v. *Municipal Court* (1980) 102 Cal.App.3d 775, 778 [162 Cal.Rptr. 420].) The People argue, however, that because *Marion* and other decisions of the United States Supreme Court in which that court has held that the right to speedy trial attaches upon the filing of a formal accusation or charge have all been cases in which an indictment or information was used the question of when

the right attaches in misdemeanor prosecutions is not settled. In addition, they rely on a literal application of the quoted language in *Marion* stating that "it is either a *formal indictment* or *information* or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." (*United States* v. *Marion, supra,* 404 U.S. 307, 320 [30 L.Ed.2d 468, 479], italics added.)

We do not think the question is as unsettled as the People would have us believe, however. The Sixth Amendment guarantees the right to a speedy trial to the accused in "all criminal prosecutions." We find nothing in the opinions of the United States Supreme Court which construe and apply the Sixth Amendment speedy trial guarantee to support a conclusion that the right differs based upon definitional labels attached to criminal offenses by the Legislature. Indeed, many offenses are punishable as either felonies or misdemeanors,[7] while others have been designated misdemeanors for a first offense and felonies thereafter.[8] Some have been elevated from misdemeanor to felony status when the Legislature determined that penalties greater than those attached to misdemeanors are appropriate. On occasion the reverse may occur.[9] And at times in the history of our state, misdemeanor penalties have exceeded some felony penalties.[10] Were we to accept the literal reading of the isolated language in *Marion* relied on by the People the speedy trial right of a minor initially charged with a felony in a petition filed pursuant to Welfare and Institutions Code section 602, but then certified for trial as an adult, would not attach until arrest, while that of an adult, charged with the same offense, would attach upon the filing of an information or indictment. We do not understand the People to be making such a claim or the Constitution to permit that result.[11]

---

[7]Petitioner is charged with such an offense. (See fn. 5.) Other offenses in this category include second degree burglary (§ 461); some assaults (§§ 241.1, 241.4); some batteries (§ 243, subds. (c) and (d)); vehicular manslaughter (§ 193, subd. (4)); and a variety of offenses involving theft or forgery (§§ 470a, 470b, 473, 474, 475, 475a, 476, 476a, 481, 484b, 484i, subd. (b), 666.)

[8]See, e.g., sections 499b, 499b.1, subdivision (b), 647a.

[9]See, e.g., section 137, subdivision (a), which was a misdemeanor when enacted in 1872, but was elevated to a felony only a year later. (Code Amend. 1873-1874, ch. 614, § 10, p. 425.)

[10]The penalty for false personation (§ 529) for example was two years in the county jail when the section was enacted in 1872, making the offense a misdemeanor by definition. That for refusing to arrest or receive a person charged with crime, applicable to peace officers (§ 142), was five years in the county jail. Many felonies were punishable by imprisonment "not exceeding five years," while others had lesser terms of imprisonment.

[11]We do not decide here, of course, whether the Sixth Amendment right to a speedy trial extends to delinquency proceedings in a juvenile court. While the United States Supreme Court appears not to have decided that question, it has been held applicable in New York (see *Matter of Anthony P.* (1980) 104 Misc.2d 1024 [430 N.Y.S.2d 479]; *Matter of Patrick*

In determining the applicability of other constitutional rights, the Supreme Court has emphasized that the nature of the proceeding and its consequences determine the applicability of the protections of the Bill of Rights, not "labels of convenience." (See, e.g., *In re Gault* (1966) 387 U.S. 1, 50 [18 L.Ed.2d 527, 558, 87 S.Ct. 1428]; see also *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 541 [29 L.Ed.2d 647, 658, 91 S.Ct. 1976]; *Matter of Anthony P., supra,* 104 Misc.2d 1024 [430 N.Y.S.2d 479, 480].) Moreover, elsewhere in *Marion* the court uses language generally applicable to any criminal proceeding, referring to the time at which "the putative defendant in some way becomes an 'accused'" (404 U.S. at p. 313 [30 L.Ed.2d at p. 474]); to "indictment, information, or other formal charge" (*id.,* at p. 321 [30 L.Ed.2d at p. 479]); and to whether the defendant had been "arrested, charged, or otherwise subjected to formal restraint prior to indictment" (*id.,* at p. 325 [30 L.Ed.2d at p. 481]), as events triggering the right to speedy trial.

The People suggest no basis upon which to explain or support a construction of the right to speedy trial that extends to misdemeanor defendants different rights than it accords felony defendants.[12] Nor do they offer any basis for distinguishing between those defendants charged with misdemeanors by indictment and those charged by complaint.

That the Sixth Amendment guarantee does apply to misdemeanants, and does so when an indictment is the accusatory pleading is beyond dispute. That was the case in *Klopfer* v. *North Carolina, supra,* 386 U.S. 213, in which the Sixth Amendment guarantee of a speedy trial was held to be applicable to the states by incorporation through the Fourteenth Amendment. The defendant in *Klopfer* had been charged with criminal trespass, a misdemeanor, by indictment. After a prompt trial at which the jury failed to reach a verdict, and two orders for continuance of the case for a term, the prosecutor was granted leave to enter a nolle prosequi which would have postponed trial indefinitely. The Supreme Court considered the same interests that it had held were protected by the Sixth Amendment in felony prosecutions. "The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go 'whithersoever he will.' The pendency of the indictment may subject him

---

*G.* (1977) 92 Misc.2d 126 [399 N.Y.S.2d 862]) and Alaska (*RDSM* v. *Intake Officer* (Alaska 1977) 565 P.2d 855), and was assumed to apply in *State* v. *Boatman* (Fla. 1976) 329 So.2d 309. That assumption has been made by one leading authority in this state. (1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 6.33, p. 196.)

[12]In attempting to develop a different rule for misdemeanors, the People do not consider whether, if this petitioner's right to a speedy trial had been presumptively violated because the offense had been charged as a felony by indictment more than four years before his arrest, it would be constitutionally permissible to avoid that conclusion by reducing the charge to a misdemeanor.

to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the 'anxiety and concern accompanying public accusation,' the criminal procedure . . . clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States." (386 U.S. at pp. 221-222 [18 L.Ed.2d at p. 7], fn. omitted.)

Although *Klopfer* did not address the question presented here—the time at which the Sixth Amendment right to speedy trial attaches in a misdemeanor prosecution—it precludes any claim that the scope of the right and the considerations relevant to finding a cognizable violation of the right differ in felony and misdemeanor prosecutions.

 The People also seek support for their position in inapposite decisions of this court. In *People* v. *Hannon* (1977) 19 Cal.3d 588, 605 [138 Cal.Rptr. 885, 564 P.2d 1203], we concluded that the right to speedy trial did not attach under the Sixth Amendment upon the filing of a complaint. *Hannon,* however, involved a *felony* complaint, a pleading to be followed upon the arrest of the defendant by a preliminary hearing, and if probable cause was shown, by an order binding the defendant over for trial and the filing of an information. (§§ 859a, 859b, 872, 739.) A felony complaint, unlike a misdemeanor complaint, does not confer trial jurisdiction. It invokes only the authority of a magistrate, not that of a trial court. (§ 806.) The People's argument ignores the distinct function of the felony complaint as a preliminary accusation. The felony complaint functions to bring the defendant before a magistrate for an examination into whether probable cause exists to formally charge him with a felony. Only if probable cause exists may an information invoking the trial jurisdiction of the superior court be filed. In addition, the filing of a felony complaint, unlike indictment or accusation by information, does not threaten oppressive pretrial incarceration. The time constraints within which the preliminary hearing must be conducted or the complaint dismissed and the defendant released (§ 859b) ensure that the defendant is not subjected to extended anxiety or public opprobrium, and by giving the defendant immediate notice of the charge and opportunity to defend avoid prejudice to the defense. This step, preliminary to formal accusation in the court with jurisdiction over the prosecution of the charge, does not implicate the Sixth Amendment right to speedy trial if our interpretation of *Marion* is correct. The misdemeanor complaint, by contrast, is not a preliminary accusation. It is a formal charge, an accusatory pleading giving the court jurisdiction to proceed to trial.[13]

---

[13]The People also seek to rely on our statement in *Scherling* v. *Superior Court, supra,* 22

We are not alone in our conclusion that the right to speedy trial under the Sixth Amendment is not dependent upon the label placed on an accusatory pleading. The Sixth, Ninth, and District of Columbia Circuits have interpreted *Marion* as holding that the right attaches upon the filing of formal charges. (*United States* v. *Martin* (6th Cir. 1976) 543 F.2d 577, 579; *United States* v. *Cordova* (9th Cir. 1976) 537 F.2d 1073, 1075; *United States* v. *Jones* (D.C.Cir. 1975) 524 F.2d 834, 839, fn. 7.) Appellate courts in several states interpret *Marion* in a similar manner, referring in their decisions to "complaints" as well as other charging documents. (See, e.g., *Yarbor* v. *State* (Alaska 1976) 546 P.2d 564, 567; *People* v. *Velasquez* (Colo. 1982) 641 P.2d 943, 951; *People* v. *Nichols* (1978) 60 Ill.App.3d 919 [18 Ill.Dec. 330, 377 N.E.2d 815, 819]; *Commonwealth* v. *Conant* (1981) 12 Mass.App. 287 [423 N.E.2d 1035, 1036]; *State* v. *Brouillette* (Minn. 1979) 286 N.W.2d 702, 706; *Bauhaus* v. *State* (Okla.Crim. 1975) 532 P.2d 434, 439; *Estrada* v. *State* (Wyo. 1980) 611 P.2d 850, 852-853.) Others recognize the right as applicable upon the filing of formal charges or accusations. (See, e.g., *State* v. *Bryson* (1972) 53 Hawaii 652 [500 P.2d 1171, 1173]; *State* v. *Roddy* (R.I. 1979) 401 A.2d 23, 30, fn. 4; *Matter of Anthony P., supra,* 104 Misc.2d 1024 [430 N.Y.S.2d 479, 480]; *State* v. *Goltz* (1982) 197 Mont. 361 [642 P.2d 1079, 1081]; *State* v. *Tafoya* (1977) 91 N.M. 121 [570 P.2d 1148, 1150]; *Avants* v. *State* (1974) 257 Ark. 22 [513 S.W.2d 805, 807].)

Considering procedures which, like those in this state, distinguish felony and misdemeanor complaints, the Court of Appeals of Maryland reached the same conclusion regarding the nature of the accusatory document necessary to activate the speedy trial right. In *State* v. *Gee* (1984) 298 Md. 565 [471 A.2d 712], the court reasoned: "It is obvious that the *issuance* of the warrant of arrest placed no actual restraint upon Gee's liberty. Thus, the 'arrest' requirement of the speedy trial rule was in no way satisfied by the mere issuance of the warrant. . . . [¶] [However a]s defined in the rules of the Maryland District Court, a warrant is a written order by a judicial officer . . . . There must be attached to it a copy of the charging document. . . . [¶] A defendant may be tried in the District Court upon the document consisting of the warrant and the statement of charges when the offense charged is under the jurisdiction of that court. . . . [¶] We think that the document consisting of a warrant of arrest and statement of charges on

---

Cal.3d 493, 504, that "under California as well as federal law, the right to a speedy trial clearly attaches after an arrest or the filing of an indictment or information." But *Scherling,* too, was a felony prosecution in which the defendant sought dismissal after the information was filed. We had before us neither a felony complaint nor a misdemeanor complaint. As the People note in their effort to convince us that the question of when the speedy trial right attaches in misdemeanor proceedings was not resolved by *Marion* because that case involved a felony, "an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

which the warrant is based (warrant-statement of charges) is a 'formal charge' in the contemplation of the speedy trial right *when a defendant is subject to be tried on that document.* In that event the criminal prosecution has truly commenced and the putative defendant has become an 'accused.' The State has committed itself to prosecute and the adverse positions of the State and defendant have solidified. . . . A warrant-statement of charges on which a defendant can be tried is tantamount to an indictment or an information. Therefore, its mere issuance marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. . . .

"On the other hand when the defendant cannot be tried under the warrant-statement of charges he is not held to answer a criminal charge on the basis of that document. Its issuance does not mark the onset of formal prosecutorial proceedings to which the Sixth Amendment guarantee is applicable, nor has the putative defendant thereby become an 'accused.' The State has not by the issuance of such a warrant-statement of charges committed itself to prosecute. Before it can proceed the grand jury must indict or the State's Attorney must file an information. Neither is obliged to do so. . . . In such circumstances the warrant-statement of charges is not the equivalent of an indictment or an information. It is not a 'formal charge' and thus, its mere issuance does not activate the speedy trial provision." (471 A.2d 712, 715-716, italics in original; accord *Favors* v. *Eyman* (9th Cir. 1972) 466 F.2d 1325.)

■ The People argue alternatively that whether the prosecution is for a felony or a misdemeanor the right should not attach until the accused is aware of the formal charge. Until that time none of the interests sought to be protected by the Sixth Amendment is implicated. The accused is not incarcerated or otherwise restrained, his life is not disrupted by the existence of the charge, and he is not conscious of any public obloquy, stress, or anxiety. To the extent that his ability to defend may be impaired, adequate protection is available through application of due process principles should he demonstrate prejudice. In support of this approach to speedy trial rights the People rely on what they perceive to be a shift in emphasis by the Supreme Court in its refusal to apply the Sixth Amendment in *United States* v. *MacDonald, supra,* 456 U.S. 1, 7.

"The Sixth Amendment right to a speedy trial is . . . not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while re-

leased on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." (*United States* v. *MacDonald, supra*, 456 U.S. 1, 8 [71 L.Ed.2d 696, 704].)

The People find significance in the omission from this statement of purpose of reference to "public obloquy," one of the consequences of delay mentioned by the *Marion* court.

In *MacDonald* the court held that the time after dismissal of military charges and the defendant's indictment on civilian charges need not be considered in evaluating his speedy trial claim, stating also that "[f]ollowing dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation." (456 U.S. at p. 9 [71 L.Ed.2d at p. 704].)

Contrary to the People's understanding of *MacDonald,* we find in that opinion a continued emphasis on the importance of the speedy trial guarantee in protecting against disruption of a defendant's life which is the major evil flowing from the considerations enumerated by the court in *Marion.* And, as we observed above, the court made express reference to "exposure to public obloquy" as an evil to be prevented in the *MacDonald* opinion.

Nor are we persuaded by the thesis which underlies the People's argument—an assumption that no adverse consequences flow from a misdemeanor complaint of which the defendant is unaware. A misdemeanor complaint is a public document. (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782 [136 Cal.Rptr. 821].) Contrary to the assertion of the People, statutes forbidding dissemination of criminal history information which implement citizens' rights to privacy[14] do not ensure that an outstanding complaint and arrest warrant will not become public or come to light in a routine credit or employment check. An arrest warrant issued on the strength of a complaint (see § 1427) is not confidential. The Attorney General has recently expressed his view that local officials may publish in a newspaper the names of persons for whom warrants of arrest have been issued for the purpose of obtaining public assistance in locating them. He reasons that the information that a warrant has been issued is a "public fact." (67 Ops.Cal.Atty.Gen. No. 83-906, Oct. 11, 1984.)[15]

---

[14]See, e.g., section 11105.

[15]The Attorney General reasons in his opinion: "In this opinion we are not concerned with the execution of the warrant of arrest. If the whereabouts of the defendant is known to the police agency which has the warrant it is unlikely that such agency would publicly disclose the existence of the warrant for fear that the defendant would flee before it could be served. On the other hand, if the location of the defendant is unknown the police agency

In urging us to reject a literal reading of the language of *Marion* declaring that "either a formal indictment or information or . . . the actual restraints imposed by arrest and holding to answer" engage the protections of the Sixth Amendment, the People place primary reliance on *United States* v. *Watson* (2d Cir. 1979) 599 F.2d 1149, and *United States* v. *Hay* (10th Cir. 1975) 527 F.2d 990. Those decisions held that a delay between the filing of a sealed indictment and the arrest of the defendant does not implicate Sixth Amendment speedy trial rights. But even if those decisions are correct in concluding that a sealed indictment is not an accusatory pleading within the meaning of *Marion,* they do not support the People's argument that a defendant is not accused until he is arrested on a misdemeanor complaint or has notice of it. Each recognized that the Sixth Amendment right to speedy trial attaches as soon as the indictment is unsealed and made public, or when the accused has notice of it. (599 F.2d at p. 1156; 527 F.2d at p. 994.) We cannot, therefore, equate a misdemeanor complaint which is a prerequisite to issuance of a warrant to a sealed indictment, nor can we accept the People's argument that if the defendant is unaware of the complaint or warrant he will not be subject to public opprobrium or possible disruption of his life. To the contrary, the opinion of the Attorney General confirms the existence of a danger that a pending misdemeanor complaint of which the defendant is unaware may cause disruption of his life by affecting his credit rating, job applications, admission to schools and other activities in which background checks are routine.

Thus this aspect of the reasoning of the *Watson* court is inapplicable. There the decision was based in part on absence of notice to the public of the charge. "We hold that the filing of a sealed indictment does not, in the light of these purposes, trigger the speedy trial provision. Because neither the indicted defendant nor the public has notice of the charges, such an indictment does not bring about 'the major evils protected against by the speedy trial guarantee.' *Marion, supra,* 404 U.S. at 320, 92 S.Ct. at 463,

---

may elect to send copies of the warrant or abstracts thereof by telegraph, teletype or other electronic devices to other police agencies to allow other police officers to locate and apprehend the defendant. (Pen. Code, § 850.) The familiar 'all points bulletin' often reaches the general public when media attention focuses on the defendant sought through the arrest warrant. . . .

"The fact of the filing of the criminal complaint and the fact of the issuance of a warrant of arrest . . . are matters of record in the court. (Pen. Code, § 1428.) Ordinarily, court records are public records as explained in Estate of Hearst (1977) 67 Cal.App.3d 777, 782-783 . . . .

" . . . . . . . . . . . . . . . . . . . . .
"The publication contemplated by the question presented to us is dissimilar from a tortious disclosure of old facts. The district attorney would publish or cause to be published a current public fact that a person was wanted on a criminal charge. The apprehension of such person is a matter of legitimate public concern, i.e., enforcement of child support by the location of the absent parent. . . ."

namely, public obloquy and anxiety to the accused." (599 F.2d 1149, 1156, fn. 5.) Similar reasoning underlies the *Hay* decision. There the court noted that the defendant had not been available for prosecution and that because the indictment had been sealed he had not been subject to restraints on his liberty or public accusation during the period between the indictment and arrest. (527 F.2d 990, 994, and fn. 4.) The persuasive effect of *Watson* and *Hay* is further undercut by the Supreme Court's opinion in *MacDonald* where, several years after those cases had been decided the court reiterated the rule enunciated in *Marion* stating without qualification: "In *United States* v. *Marion,* 404 U.S. 307, 313 (1971), we held that the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, *or otherwise officially accused:* [¶] 'On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution. . . . The Amendment would appear to guarantee to a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him.'" (*United States* v. *MacDonald, supra,* 456 U.S. 1, 6-7 [71 L.Ed.2d 696, 702-703], italics added.)

In sum, the People do not offer a persuasive basis on which to avoid what appears to be the controlling impact of the decisions of the United States Supreme Court which hold that the right attaches upon the filing of a formal accusatory pleading. We are persuaded by the repeated reference in decisions of the United States Supreme Court to formal accusation or charge, and by the acceptance of that interpretation of *Marion* by the courts of other jurisdictions, that the Sixth Amendment right to speedy trial attaches in misdemeanor prosecutions, as it does in felonies, with the filing of the accusatory pleading, here a misdemeanor complaint, or arrest, whichever is first.[16] Therefore, since the more than four-year delay in arresting defendant is beyond question presumptively prejudicial, the municipal court erred in failing to receive evidence on the considerations relevant to the weighing process and to resolve petitioner's motion to dismiss pursuant to the dictates of *Barker* v. *Wingo, supra,* 407 U.S. 514: by weighing

---

[16]In *Overby* v. *Municipal Court, supra,* 121 Cal.App.3d 377, the Court of Appeal reached a contrary conclusion, reasoning that the rules in misdemeanor cases were no different than those in felony cases, and holding on that basis that "the federal right does not attach until the individual has been arrested, charged (in the statutory 1382 sense) or otherwise subjected to formal restraint." (121 Cal.App.3d at p. 387.) The reference to section 1382 was to the requirement of subdivision 3 of that section which provides the time limits within which a misdemeanor defendant must be brought to trial after arraignment. Without explanation, citation of authority, or analysis, the court assumed that the Sixth Amendment speedy trial right attached at the same time that the statutory right did, at arraignment. Inasmuch as we find no basis in the controlling decisions of the United States Supreme Court for distinguishing felony and misdemeanor speedy trial rights in this manner, *Overby* must be disapproved to the extent that it is inconsistent with our conclusions here.

the interests of the defendant and the prosecution to determine whether the right was violated in this case.

## IV

### *Pretrial Writ Review*

We next consider whether, in light of our conclusion that the municipal court erred in failing to conduct the hearing required by *Barker v. Wingo,* the superior court abused its discretion in denying the petition for writ of mandate and prohibition filed in that court.

In criminal as well as civil proceedings review of interlocutory rulings of trial courts by extraordinary writ generally is available only if there is no adequate remedy by appeal. (Code Civ. Proc., §§ 1086, 1103; cf. *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379] ["upon occasion our attention is drawn to instances of such grave nature or of such significant legal impact that we feel compelled to intervene through the issuance of an extraordinary writ"].) Although violation of the relatively short statutory time limits of section 1382 by which the Legislature has sought to implement the right to speedy trial does not implicate the interests to be protected to the same degree as does violation of the Sixth Amendment right itself, relief for statutory speedy trial violations is available pretrial. Prejudice is presumed when relief is sought on section 1382 grounds pretrial because the statute commands that the court "must order the action to be dismissed." However, when this and other statutory rights to speedy trial have been violated, a felony defendant who seeks relief on appeal must demonstrate actual prejudice. (*People* v. *Wilson, supra,* 60 Cal.2d 139, 153; see also *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].) Because the statutory time within which a defendant must be brought to trial is short, it is not unreasonable to require a felony defendant who does not seek or obtain pretrial relief to demonstrate actual prejudice when reversal of a judgment is sought on this ground on appeal.

These rules are not appropriate means by which to redress Sixth Amendment violations, however. When, in a proper *Barker* v. *Wingo* hearing a Sixth Amendment speedy trial violation has been established, reversal of a subsequent judgment of conviction and dismissal of the charge are necessary in every case. When unjustified prejudice to the defendant's ability to defend has been established there can be no question that reversal and dismissal are required. And where the balance of interests establishes a violation of a defendant's speedy trial right because of the impact on his other interests— prolonged restraint, public obloquy, anxiety, stress, and disruption of

everyday life—leaving him to his remedy on appeal would exacerbate the harm by prolonging the period during which he remained subject to those conditions and would offer only the Pyrrhic victory of a reversal should he ultimately be convicted.[17] Extraordinary writ review of a misdemeanor defendant's motion to dismiss made on speedy trial grounds is therefore necessary because appeal does not afford an adequate remedy for redress of these violations. Relief should be granted whenever the trial court record establishes a violation of the right to speedy trial guaranteed by the Sixth Amendment. The defendant will thus be accorded some redress for the violation of his interests as he will not have to undergo the strain and expense of trial; the public fisc will be spared the expense of a futile trial and consequent appeal; and an effective means by which to enforce the right to speedy trial will exist.

■■■ The writ should also issue in cases such as this in which although the defendant offered evidence establishing a presumptively prejudicial delay, and that evidence was undisputed by the People in any essential aspect, the trial court failed to put the People to its proof, i.e., it failed to require the People to offer justification adequate to demonstrate that the legitimate interests of law enforcement warranted the disruption of defendant's life some four and one-half years after the charged offense allegedly was committed. The superior court therefore abused its discretion in denying the petition for writ of mandate and prohibition and in failing to compel the municipal court to conduct a hearing at which the People would be called upon to justify the delay.

Let a peremptory writ of mandate issue directing the Superior Court for the County of Los Angeles to vacate its order denying the petition for writ of mandate and to issue a new and different order directing issuance of a writ of mandate to the municipal court ordering further proceedings consistent with these views.

Mosk, J., Broussard, J., and Reynoso, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I join in my colleagues' analysis of the federal constitutional speedy trial right. (Maj. opn., *ante,* Part III.) However, I would not be so quick to conclude that the state constitutional guarantee offers any less protection to California citizens. (*Id.,* Part II.)

For many years, this court held that the California speedy trial right " 'reflects the letter and spirit of' the Sixth Amendment to the United States

---

[17]If a misdemeanant were unable to obtain his release on bail or on his own recognizance during the pendency of the appeal, he might serve his entire term while awaiting this hollow victory.

Constitution" (*People* v. *Wilson* (1963) 60 Cal.2d 139, 144, fn. 2 [32 Cal.Rptr. 44, 383 P.2d 452], quoting *Harris* v. *Municipal Court* (1930) 209 Cal. 55, 60 [285 P. 699].) When this court chose to reject the letter and spirit of the federal Constitution, it did so to hold that the state speedy trial right was *more* protective, attaching at an earlier stage of the proceedings than did the Sixth Amendment. (*People* v. *Hannon* (1977) 19 Cal.3d 588, 604-608 [138 Cal.Rptr. 885, 564 P.2d 1203]; compare *United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455].) Yet, the majority now find that the state Constitution, as interpreted in *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493 [149 Cal.Rptr. 597, 585 P.2d 219], places on the accused who claims a violation of his right to a speedy trial an initial burden of showing prejudice, a burden which the federal Constitution does not impose.

I agree that the language of *Scherling* and its predecessors suggests that an accused must demonstrate that his defense has been prejudiced by a delay before any inquiry need be made into the length or causes of that delay. However, I strongly doubt that this court ever consciously chose to construe the state speedy trial provision to provide less protection against governmental abuse than does the federal Constitution.

On the contrary, the *Scherling* language appears to have evolved from earlier cases in which the speedy trial right did *not* apply and in which the due process clause alone was applicable. Those cases incorporated the threshold prejudice requirement into speedy trial claims without considering whether this constituted a step backward from the development of federal law. Nor did they expressly consider whether such a requirement was logically relevant to a claimed speedy trial violation. I would urge my colleagues to reconsider the decision to establish it as a fixed feature of the California constitutional guarantee.

## A.

The idea that an accused must in all cases affirmatively show prejudice before a trial court may dismiss the charges for violation of the constitutional right to a speedy trial is apparently traceable to *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 740 [91 Cal.Rptr. 578, 478 P.2d 10]. Before *Jones*, an unreasonable or oppressive delay in bringing an accused to trial could result in dismissal of the charges regardless of actual prejudice. "When there has been an extended delay in bringing a defendant to trial, '*it is not necessary that the party accused affirmatively show prejudice. . . .* It is enough for the defendant to show that the prosecution has been unreasonably delayed. It will not be presumed that good cause for the delay in fact existed. If there was any good cause it was for the prosecution to show

it.' (*Harris* v. *Municipal Court, supra,* 209 Cal. 55, 64[.])" (*Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 812 [51 Cal.Rptr. 921, 415 P.2d 809], italics added; see also *McCullar* v. *Superior Court* (1968) 264 Cal.App.2d 1, 4 [70 Cal.Rptr. 21]; *Zimmerman* v. *Superior Court* (1967) 248 Cal.App.2d 56, 61 [56 Cal.Rptr. 226]; *Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507, 512-513 [7 Cal.Rptr. 869].)

In *People* v. *Archerd* (1970) 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421], this court considered what rules should apply when an accused claims there has been an unreasonable delay in arresting and charging him. *Archerd* held that the speedy trial right had no application to such a claim. "One does not become an accused until the filing of a complaint. The provisions of the Sixth Amendment contemplate a pending charge, not the mere possibility of a criminal charge." (*Id.,* at p. 639.) However, *Archerd* did find that due process could be violated by a preaccusatory delay—if the delay were purposeful, oppressive, and prejudicial to the accused's ability to defend himself. (*Id.,* at p. 640.) Thus, *Archerd* established prejudice as an essential element of a *due process claim.*

*Jones* was filed a few weeks after *Archerd.* Addressing a postcomplaint delay to which the speedy trial right *was* applicable (3 Cal.3d at pp. 738-740), *Jones* held that to determine whether that right was violated "[t]he prejudicial effect of the delay on petitioner must be weighed against any justification for the delay." (*Id.,* at p. 740.) In a footnote which appears to be the root source of the majority's holding, *Jones* linked the speedy trial test to *Archerd*'s preaccusatory due process test: "[A] claimed denial of due process would be decided by the same approach, namely, balancing the effect of the delay on the defendant against any justification for the delay." (*Id.,* at p. 741, fn. 1.)

It should be pointed out that *Jones* itself did not treat the prejudice factor as a threshold requirement. It found that the delay was both unreasonable and prejudicial to the accused and that dismissal of the charge was therefore required. (*Jones, supra,* 3 Cal.3d at pp. 740-741.) It did not consider whether dismissal would be required if only an unreasonable delay had been established. It certainly did not purport to overrule such earlier cases as *Harris* v. *Municipal Court, supra,* 209 Cal. 55 which, as the majority note, recognized a presumption of prejudice from an unreasonable delay. (Maj. opn., *ante,* at pp. 253-254.)

A year and a half after *Jones,* the United States Supreme Court decided *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182]. *Barker* expressly did *not* require a threshold showing of prejudice in order to establish a speedy trial violation. On the contrary, it adopted a balancing

test in which actual prejudice was only the fourth (and final) factor to weigh. (*Id.*, at pp. 530-533 [33 L.Ed.2d at pp. 116-119].)

Under *Barker,* a court must first inquire into the length of the delay and the reasons for it. A sufficiently long delay, *Barker* held, may be presumptively prejudicial. A sufficiently long delay caused by improper or oppressive governmental motives might in itself be grounds for dismissal. (*Ibid.*) As the United States Supreme Court would later explain, "*Barker* v. *Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial[.]" (*Moore* v. *Arizona* (1973) 414 U.S. 25, 26 [38 L.Ed.2d 183, 185, 94 S.Ct. 188].)

This court's first post-*Barker* case was *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83 [106 Cal.Rptr. 786, 507 P.2d 90].[1] *Sykes* declined to apply *Barker*'s balancing test to a delay which was covered by the state constitutional guarantee but not by the statutory speedy trial provision. (*Id.*, at pp. 90-92; see Pen. Code, § 1382.) However, *Sykes* extended the statutory 60-day rule to cover the case at bench and bottomed its decision on the equal protection clause. (9 Cal.3d at p. 92.) Application of the statute, of course, meant that the case had to be dismissed regardless of prejudice. (*Id.*, at pp. 88-89; *People* v. *Wilson, supra,* 60 Cal.2d at p. 151.)[2] *Sykes* left open the possibility that the *Barker* test or a similar one would apply where there was no applicable statute. In fact, *Sykes* noted that the balancing test used in *Jones* reached the same result as *Barker.* (9 Cal.3d at p. 93.)

The first case to acknowledge that a threshold prejudice requirement was inconsistent with *Barker* v. *Wingo* was *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433 [121 Cal.Rptr. 457, 535 P.2d 321]. *Crockett* found that where charges once dismissed under Penal Code section 1381 were refiled as permitted by section 1387, the accused was entitled to a second dismissal only if his constitutional right to a speedy trial was violated. (*Id.*, at p. 440.) *Crockett* then found that a state constitutional claim must rest on an initial showing of prejudice, and that no such showing had been made in the case at bench. However, in a footnote the court noted the possibility that a federal constitutional claim under *Barker* v. *Wingo* might prevail. (*Ibid.*, fn. 8.) Justices Mosk and Tobriner, dissenting, would have required dismissal without any showing of prejudice where the delay is extended (citing *Barker*

---

[1] *People* v. *Mitchell* (1972) 8 Cal.3d 164 [104 Cal.Rptr. 348, 501 P.2d 916], filed a few months after *Barker,* simply affirmed a lower court's dismissal on speedy trial grounds without discussion of *Archerd, Jones,* or *Barker.*

[2] *Barker* had expressly approved the idea that the states could adopt by statute reasonable time periods which would define when the speedy trial right was violated. (*Barker, supra,* 407 U.S. at p. 523 [33 L.Ed.2d at pp. 112-113].)

v. *Municipal Court, supra,* 64 Cal.2d at p. 812) or where it exceeds applicable statutory time periods (citing *Sykes, supra,* 9 Cal.3d at p. 89). (*Crockett, supra,* 14 Cal.3d at pp. 445-446.)

Next came *People* v. *Hannon, supra,* 19 Cal.3d 588, which addressed another aspect of the speedy trial right: when does it attach? *Hannon* found that under federal law (*United States* v. *Marion, supra,* 404 U.S. 307) the right did not attach in a felony prosecution at the time the complaint was filed.[3] *Hannon* rejected this as an interpretation of the California guarantee. It noted that California had historically extended the protection of the speedy trial right to the prearrest stage in cases where a complaint has been filed charging a felony. (*Hannon, supra,* 19 Cal.3d at p. 607.) It declined to retreat from this position simply to follow the federal rule: " '[O]ur first referent is California law and the full panoply of rights Californians have come to expect as their due. . . .' [¶] . . . We continue to adhere to that *higher standard of protection against the abuses of pretrial delay.*" (*Id.,* at pp. 606-608, fn. omitted, italics added.)

However, in analyzing the claim of speedy trial violation in the case before it, *Hannon* applied the old balancing test of *Jones.* It found the right had not been violated by a seven-month delay between complaint and arrest, since there was neither prejudice to the accused nor unreasonable behavior by the police. (*Id.,* at pp. 608-610.)

Finally, there was *Scherling* v. *Superior Court, supra,* 22 Cal.3d 493. *Scherling,* like *Archerd,* involved a precomplaint, prearrest delay to which the speedy trial right was inapplicable. (*Id.,* at p. 505.) Turning to the due process claim, *Scherling* considered the accused's proffered showing of prejudice, as required by *Archerd.* Finding that no prejudice had been established, *Scherling* declined to inquire into the justification for the delay. (*Id.,* at pp. 506-507.) Though *Scherling* noted that a speedy trial claim would be reviewed in the same manner (*id.,* at p. 505), it made no mention of whether such review would be appropriate under *Barker* v. *Wingo.*

### B.

The logical flaw in imposing a threshold prejudice requirement is that it takes too narrow a view of the interests which the speedy trial right protects. Those interests are not limited to the ability to defend against the charges.

---

[3]*Marion*'s requirement that there be "actual restraints imposed by arrest and holding to answer a criminal charge" before the Sixth Amendment came into play (404 U.S. at p. 320 [30 L.Ed.2d at p. 479]) meant that the federal right did not attach in California at least until a magistrate ordered the accused bound over for trial following a preliminary examination. (*Hannon, supra,* 19 Cal.3d at p. 588.)

They include as well preventing oppressive pretrial incarceration and minimizing the anxiety and concern of the accused. (*Barker* v. *Municipal Court, supra,* 64 Cal.2d at p. 813; *Barker* v. *Wingo, supra,* 407 U.S. at p. 532 [33 L.Ed.2d at p. 118]; *United States* v. *Marion, supra,* 404 U.S. at p. 320: "[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." See also *United States* v. *MacDonald* (1982) 456 U.S. 1, 7-8 [71 L.Ed.2d 696, 703-704, 102 S.Ct. 1497].)

Another purpose of the speedy trial right is to protect against oppressive or negligent governmental delay in bringing cases to trial. Underlying this right is the belief that once charges have been filed, governmental delay must be justified by necessity. "The government cannot take property from the meanest inhabitant, without just compensation paid or tendered in advance; but it takes his liberty, which it has been justly said is to some extent to take his life, upon a mere charge of crime. This is necessary, that society may be protected. But necessity is the only excuse, and to imprison beyond what is absolutely necessary is tyrannous and oppressive. And that is precisely what the state has covenanted with each inhabitant that it will not do." (*In re Begerow* (1901) 133 Cal. 349, 352 [65 P. 828].) Thus, charges have been ordered dismissed when the delay is lengthy and unjustified, regardless of its actual effect on the defense at trial. (*Barker* v. *Municipal Court, supra,* 64 Cal.2d at p. 812; *Harris* v. *Municipal Court, supra,* 209 Cal. at pp. 62-63.)

These purposes are distinct from those protected by the prearrest due process right. Were they not, there would be no point in determining the point at which the speedy trial right attaches. (See *Hannon, supra,* 19 Cal.3d at pp. 603-608.)

The due process right protects the fairness of the trial itself. (*United States* v. *MacDonald, supra,* 456 U.S. at p. 8 [71 L.Ed.2d at p. 704]; see *United States* v. *Lovasco* (1977) 431 U.S. 783, 790 [52 L.Ed.2d 752, 759, 97 S.Ct. 2044], rehg. den., 434 U.S. 881 [54 L.Ed.2d 164, 98 S.Ct. 242].) The harm to the accused from extended pretrial delays has been compared to the harm from governmental suppression of material witnesses or evidence. (*United States* v. *Marion, supra,* 404 U.S. at p. 324 [30 L.Ed.2d at pp. 480-481]; see also *People* v. *Alvarado* (1968) 258 Cal.App.2d 756 [66 Cal.Rptr. 41].) Thus, it is logical to require a showing of actual prejudice

concerning the ability to defend, in order to trigger an inquiry into whether a governmental delay in initiating prosecution has made a trial unfair.

Furthermore, at the preaccusatory stage courts are reluctant to scrutinize whether a delay was really necessary. Both this court and the United States Supreme Court have recognized the difficulty of trying to second guess the pace at which law enforcement investigation should proceed or the moment at which the decision to file charges should be made. (*Archerd, supra,* 3 Cal.3d at p. 640; *United States* v. *Lovasco, supra,* 431 U.S. at pp. 790-796 [52 L.Ed.2d at pp. 759-763].) The threshold prejudice requirement ensures that this inquiry need be made only in those select cases where the accused has suffered harm.

Once charges are brought, however, the interests at stake are different. The state's need to investigate is presumably satisfied once it has filed charges. At this stage an inquiry into the reasons for delay does not involve judicial interference with law enforcement. At the same time, the state has tolled the statute of limitations, which is the accused's primary protection against the prejudice inherent in defending against a stale charge. (*United States* v. *MacDonald, supra,* 456 U.S. at p. 8; *Archerd, supra,* 3 Cal.3d at p. 639.) Moreover, the other interests protected by the speedy trial right come into play, as does "the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite . . . proceedings to the greatest degree that is consistent with the ends of justice." (Pen. Code, § 1050; see *Sykes, supra,* 9 Cal.3d at p. 88.)

At this stage, it makes no sense to set up a threshold requirement that the accused show prejudice to his ability to defend before there can be an inquiry into the length of and reasons for the state's delay. The federal Constitution contains no such requirement, and I would not read one into the California Constitution.

**LUCAS, J.**—I respectfully dissent. The majority fails to cite convincing caselaw or policy justifications to support its holding that a misdemeanant's federal speedy trial rights attach upon the filing of a complaint even though no arrest has yet occurred. The United States Supreme Court has never extended speedy trial rights to prearrest delays and our own court has held that the filing of a criminal complaint does not trigger the federal speedy trial guarantee. (*People* v. *Hannon* (1977) 19 Cal.3d 588 [138 Cal.Rptr. 885, 564 P.2d 1203].) The majority's attempt to distinguish *Hannon* is unsuccessful and its attempt to link the filing of a misdemeanor complaint with the policies underlying the speedy trial clause of the Sixth Amendment are either misguided or based on unsupported speculation.

The Sixth Amendment states that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." (U.S. Const., 6th Amend.) Our task therefore is to decide when a misdemeanor suspect becomes an "accused" for purposes of the speedy trial clause. In a passage applicable to the present case, the United States Supreme Court explained the interests protected by the speedy trial provision: "The Sixth Amendment right to a speedy trial is . . . not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." (*United States* v. *MacDonald* (1982) 456 U.S. 1, 8 [71 L.Ed.2d 696, 704, 102 S.Ct. 1497].)

*MacDonald* establishes that not all criminal accusations automatically trigger the protections of the speedy trial provision. The only ones so affected are those that present a realistic possibility of (1) pretrial incarceration, (2) anxiety to the accused, or (3) public scorn arising from widespread knowledge of the charges. All three interests are clearly implicated if a suspect is arrested and charged with a felony or a misdemeanor. Therefore, arrest of a suspect, providing he is subsequently charged, will always trigger the federal speedy trial provision. But the high court has never extended speedy trial rights to an accused before that court prior to his arrest,[1] and *United States* v. *Marion, supra,* 404 U.S. 307, 320-322 [30 L.Ed.2d 468, 478-480], indicates that the court is not convinced that speedy trial rights should *ever* attach before a suspect is arrested.

In *Marion* the court stated, "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment. [¶] Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. *But we decline to extend the reach of the amendment to the period prior to arrest.* Until this event occurs, a citizen suffers no restraints on his liberty

---

[1] See, for example, *United States* v. *MacDonald, supra,* 456 U.S. 1, *United States* v. *Lovasco* (1977) 431 U.S. 783 [52 L.Ed.2d 752, 97 S.Ct. 2044], *Moore* v. *Arizona* (1973) 414 U.S. 25 [38 L.Ed.2d 183, 94 S.Ct. 188], *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], and *United States* v. *Marion* (1972) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455]. Even the dissenting opinions of the high court have argued for applying speedy trial protection for prearrest delays only when the suspect is aware of the investigation, a situation that does not exist in the present case. (See, e.g., *MacDonald, supra,* at pp. 12-21 [71 L.Ed.2d at pp. 706-712] [dis. opn. by Marshall, J.]; *Lovasco, supra,* at pp. 797-800 [52 L.Ed.2d at pp. 763-765] [dis. opn. by Stevens, J.].)

and is not the subject of public accusation: his situation does not compare with that of a defendant who had been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context." (*Id.*, at pp. 320-322, italics added, fns. omitted.)[2]

*Moore* v. *Arizona, supra,* 414 U.S. 25, 27 [38 L.Ed.2d 183, 186], similarly implies that prearrest delays may be outside the purview of the federal speedy trial guarantee. There, the court reiterated the disabilities caused by "[i]nordinate delay"[3] and observed that " 'they are inevitably present in every case to some extent, for *every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.'* [Citation.]" (*Ibid.*, italics added; see also *Barker* v. *Wingo, supra,* 407 U.S. 514, 532-533 and fn. 33 [33 L.Ed.2d 101, 118-119].)

Although the court in *Marion* concluded that the speedy trial rights of the defendants in that case attached upon their indictment (*Marion, supra,* 404 U.S. at p. 313 [30 L.Ed.2d at p. 474]), the defendants were apparently indicted and arrested on the same day. Furthermore, *Marion*'s holding cannot be read in isolation from the court's clear refusal to extend speedy trial rights to the prearrest period. Even, assuming arguendo, that issuance of an *indictment* prior to arrest may trigger the federal speedy trial provision,[4] the majority is unjustified in extending speedy trial rights to a suspect upon the date a *complaint* is filed. An indictment, of course, follows a determination by a neutral factfinder (i.e., a grand jury) that there is probable cause

---

[2]There is other evidence in *Marion* that the court considered only postarrest delays as relevant to speedy trial claims. As an example of a legislative interpretation of the speedy trial right, the court cited Federal Rules of Criminal Procedure, rule 48(b) (28 U.S.C.) which "authorizes dismissal of an indictment, information, or complaint '[i]f there is unnecessary delay . . . in bringing a defendant to trial . . . .' *The rule clearly is limited to post-arrest situations.*" (*Marion, supra,* 404 U.S. at p. 319 [30 L.Ed.2d at p. 478], italics added.) This is the only passage in *Marion* that specifically mentions a complaint.

[3]The court commented that delay following arrest, " 'wholly aside from possible prejudice to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States* v. *Marion,* 404 U.S. 307, 320 (1971).' " (414 U.S. at p. 27 [38 L.Ed.2d at p. 186].)

[4]Several federal appellate courts have held that speedy trial rights are triggered by indictment, information, or arrest, *whichever occurs first.* (See, e.g., *United States* v. *Milhim* (5th Cir. 1983) 702 F.2d 522, 525; *United States* v. *Gonzales* (11th Cir. 1982) 671 F.2d 441, 444, cert. den. *Gonzales-Hernandez* v. *United States,* 456 U.S. 994 [73 L.Ed.2d 1291, 102 S.Ct. 2279]; *United States* v. *Cordova* (9th Cir. 1976) 537 F.2d 1073, 1075, cert. den. 528 U.S. 960 [50 L.Ed.2d 327, 97 S.Ct. 385].) The United States Supreme Court, however, has never so held.

to believe a suspect has committed a crime.[5] A complaint, on the other hand, may be filed merely on the information and belief of an interested party (e.g., a policeman or the district attorney). Given the different origins of these two kinds of pleading, as well as the disparity in the severity of the crimes involved, it is evident that the typical grand jury indictment will normally have a greater impact on the accused and the public than the filing of the typical misdemeanor complaint.

Indeed, we recognized the difference between a complaint and an indictment for speedy trial purposes in our decision in *People* v. *Hannon, supra,* 19 Cal.3d 588, when we revised our interpretation of the Sixth Amendment originally stated in *Jones* v. *Superior Court* (1970) 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10]. In *Jones,* without distinguishing between misdemeanors and felonies, we held that a suspect's federal and state speedy trial rights attach upon the "filing of a complaint or other charge." (*Jones,* at p. 739.) However, seven years later, in *Hannon,* we reinterpreted the federal speedy trial clause, stating, "In contrast to the conclusion we reached in *Jones,* . . . the language used by the Supreme Court in delineating the scope of protection afforded by the federal charter was more limited than that which we adopted in *Jones:* '[I]t is either a formal indictment or information *or else the actual restraints imposed by arrest and holding to answer a criminal charge* that engage the particular protections of the speedy trial provision of the Sixth Amendment.' ([Citing *Marion, supra,* 404 U.S.] at p. 320, italics added.) Insofar as the filing of an indictment or information is concerned the Supreme Court's holding is coextensive with our decision in *Jones* . . . . On the other hand, . . . we conclude that the Supreme Court intended by its use of the foregoing phrase to hold that the filing of a complaint is by itself insufficient to trigger the protection of the right to a speedy trial under the federal Constitution." (*Hannon, supra,* at pp. 605-606, italics in original.)

That we made no distinction between felony and misdemeanor complaints in our *Hannon* analysis is evidenced by our later remark that the "United States Supreme Court has apparently concluded that the Sixth Amendment guarantee of the right to a speedy trial does not extend to the prearrest stage when the sole accusation against an individual consists of the filing of a *criminal* complaint." (*Id.,* at p. 608, italics added.) A misdemeanor complaint is equally a *criminal* complaint.

---

[5]An information also follows a probable cause determination by a neutral factfinder (i.e., a magistrate), but this can only occur *after* the suspect has been arrested or concedes jurisdiction. (Pen. Code, § 738.)

The majority nonetheless attempts to confine *Hannon*'s holding to felony complaints.[6] It notes that felony complaints are not "accusatory pleadings"; they only give a magistrate jurisdiction to conduct a preliminary hearing to determine if there is probable cause to bind a defendant over for trial. A misdemeanor complaint, on the other hand, gives a municipal court judge jurisdiction to try the case. Granting this jurisdictional distinction between felony and misdemeanor complaints, the majority fails to show how it is relevant to the policies underlying the speedy trial clause. The weakness of the majority's approach is demonstrated by its reliance on *State* v. *Gee* (1984) 298 Md. 565 [471 A.2d 712].

In *Gee,* the Maryland Supreme Court relied on *Kirby* v. *Illinois* (1972) 406 U.S. 682, 689 [32 L.Ed.2d 411, 92 S.Ct. 1877], to determine when a suspect's *speedy trial rights* attach. (See *Gee, supra,* 471 A.2d at pp. 715-716.) *Kirby,* however, analyzed the Sixth Amendment *right to counsel* and has no bearing on when the right to speedy trial attaches. The United States Supreme Court made this distinction abundantly clear only last term when it reversed the Ninth Circuit for using speedy trial analysis to determine when the right to counsel attaches. (*United States* v. *Gouveia* (1984) 467 U.S. 180, 190 [81 L.Ed.2d 146, 155, 104 S.Ct. 2292].) The high court expressly declared that the speedy trial guarantee need not attach at the same time as the right to counsel, because they "protect different interests." (*Ibid.*)

Apparently the majority believes a suspect is "accused" to a greater extent upon the filing of a misdemeanor complaint because of its jurisdictional function. But to define an "accused" for speedy trial purposes, one must look to the interests protected by that right. For example, courts have held that issuance of a *sealed* indictment cannot invoke the speedy trial rights of the person indicted. (*United States* v. *Watson* (2d Cir. 1979) 599 F.2d 1149; *United States* v. *Hay* (10th Cir. 1975) 527 F.2d 990.) As stated in *Watson,* "Because neither the indicted defendant nor the public has notice of the charges, such an indictment does not bring about 'the major evils protected against by the speedy trial guarantee' [citation], namely, public obloquy and anxiety to the accused." (599 F.2d 1149, 1156, fn. 5.) In a similar vein, I fail to see why delays following a misdemeanor complaint filing would cause any greater cognizable harm than delays following a felony complaint filing.

In summary, the relevant United States Supreme Court decisions not only do not support the majority's holding, but our own decision in *People* v.

---

[6]Interestingly, the majority cites *Jones, supra,* as applicable to *misdemeanors.* (*Ante,* p. 248.) Yet, it insists that *Hannon,* which expressly reinterpreted *Jones,* applies only to felonies.

*Hannon, supra,* 19 Cal.3d 588, directly contradicts it. Furthermore, neither the majority's research nor my own discloses any case after *Marion, supra,* 404 U.S. 307, that invokes a defendant's federal speedy trial rights upon the filing of a complaint prior to arrest, information, or indictment. (See *ante,* p. 256.)[7]

In addition to the lack of supporting case authority, the majority also fails to link successfully its result with the interests protected by the speedy trial provision. The majority first notes that a delay such as occurred in the present case will likely cause witnesses to disappear, memories to fade, and evidence to vanish. (*Ante,* p. 251.) It bears emphasis here that these consequences will inevitably result from any long delay, including a precomplaint delay, and they are as likely to benefit defendant as to prejudice him. Perhaps for this reason, the United States Supreme Court has clearly held that such consequences are a concern of the due process clause of the Fifth Amendment, *not* the speedy trial clause of the Sixth Amendment. (*MacDonald, supra,* 456 U.S. at p. 8.) To state a due process claim, a defendant must prove actual prejudice, which the majority concedes defendant has been unable to do in the present case.

Next, the majority speculates that a delay following the filing of a misdemeanor complaint may disrupt the accused's life "by affecting his credit rating, job applications, admission to schools and other activities in which background checks are routine." (*Ante,* p. 261.) Other than observing that misdemeanor complaint filings may be published, the majority does not indicate how widespread public knowledge may come about. One would suppose that, absent arrest, the typical misdemeanor complaint filing, of which thousands throughout the state occur daily, would be a rather unnewsworthy event.[8] Furthermore, although some employers and schools may routinely check misdemeanor filings, the majority provides no estimate of how prevalent this practice may be. Most significantly, the majority fails to explain why this parade of horribles follows from the filing of a misdemeanor complaint, *but not a felony complaint.*[9]

---

[7]Although three of the cases cited do specifically mention a complaint as triggering the federal speedy trial guarantee, they do so only in dicta and without analysis. When read in context, the cases support only the proposition that the federal guarantee does not extend to delays prior to arrest, indictment, or information. (See *People* v. *Velasquez* (Colo. 1982) 641 P.2d 943; *Commonwealth* v. *Conant* (1981) 12 Mass.App. 287 [423 N.E.2d 1035]; *People* v. *Nichols* (1978) 60 Ill.App.3d 919 [18 Ill.Dec. 330, 377 N.E.2d 815].)

[8]According to the 1985 Annual Report of the Judicial Council of California, table A-30, at page 215, there were 717,974 nontraffic misdemeanor and infraction filings in California in the fiscal year 1983-1984. The total excludes felonies reduced to misdemeanors.

[9]One might argue that it is unfair to postpone possible punishment for years while the suspect leads a blameless life. First, argument ignores the possibility that the suspect might be more than happy to postpone punishment. Second, the defendant in the present case was arrested after he passed out from an overindulgence of PCP; we are not presented with the hypothetical defendant who shows no need for rehabilitation.

In conclusion, the majority's position is unsupported by the relevant caselaw, and its invocation of the interests protected by the federal speedy trial right rests only on surmise. I remain unconvinced there is any federal constitutional basis for extending speedy trial rights to the "prearrest stage when the sole accusation against an individual consists of the filing of a criminal complaint." (*Hannon, supra,* 19 Cal.3d at p. 608.)

I would deny the peremptory writ.

Kaus, J.,* concurred.

The application of petitioner and the petition of real party in interest for a rehearing were denied December 19, 1985, and the opinion was modified to read as printed above. Lucas, J., was of the opinion that the petition of real party in interest should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.