Filed 10/29/25  P. v. Pineda CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JORGE DEL CARMEN PINEDA,<br><br>    Defendant and Appellant. | B338142<br><br>(Los Angeles County<br>Super. Ct. No. BA264727) |

APPEAL from an order of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Erin J. Radekin for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General for Plaintiff and Respondent.

Jorge Del Carmen Pineda appeals from an order denying a Penal Code section 1473.7[1] motion to vacate an aggravated felony conviction to which he pleaded guilty pursuant to a plea agreement. Section 1473.7, subdivision (a)(1) permits "[a] person who[, like Pineda] is no longer in criminal custody [to] file a motion to vacate a conviction" on the basis that the person did not "meaningfully understand . . . or knowingly accept the actual or potential adverse immigration consequences of [the] conviction," resulting in "prejudicial error" that renders the conviction "legal[ly] invalid." (§ 1473.7, subd. (a)(1).) We agree with the trial court that Pineda failed to meet his burden of proving he did not understand the immigration consequences of his plea. Accordingly, we need not consider whether he was prejudiced. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2001, police found Pineda in possession of 175 kilograms of cocaine and 2,699 pounds of marijuana. In January 2011,[2] a criminal information charged Pineda with transportation of a controlled substance (see Health & Saf. Code, § 11352, subd. (a)) and alleged the amount of the controlled substance exceeded 80 kilograms, making him subject to a 30-year prison sentence.

In May 2011, pursuant to a plea agreement, the district attorney amended the information to allege the amount of cocaine

_____

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] Nearly 10 years passed between Pineda's arrest and the commencement of court proceedings against him. Pineda was not in custody during this time. In 2010, he filed a motion to dismiss the case pursuant to *Serna v. Superior Court* (1985) 40 Cal.3d 239, which the court denied without prejudice.

exceeded only four kilograms, reducing the applicable sentence to 10 years. Pineda pleaded guilty to the charges in the amended information, and the court sentenced him to 10 years in state prison. Before entering his guilty plea, the district attorney orally advised Pineda as follows: "[I]f you are not a citizen of the United States—I am not suggesting you are not. I say this to everybody—you are hereby advised that conviction of the offense which you have been charged [with] will have the consequences of deportation, exclusion from admission to the United States, denial of reentry or denial of naturalization pursuant to the laws of the United States." The district attorney asked whether Pineda understood this, and he stated, "Yes, sir."

After his release from prison in 2015, immigration authorities detained Pineda and began proceedings to deport him on the basis that his conviction constitutes an "aggravated felony" and "controlled substance" offense as those terms are defined by federal immigration law. In 2019, a federal immigration court ordered that he be deported, but stayed the order pending Pineda's appeal therefrom.

On April 19, 2023, pursuant to section 1473.7, Pineda moved to vacate his conviction. Pineda's declaration in support of his motion states the following:

He was born in Colombia, moved to the United States as a child in 1972, and became a permanent legal resident in 1979. His wife and five-year-old daughter are both United States citizens. He "cooperated with the [federal authorities] and the [i]nvestigators because [he did not] want to get deported." His privately retained counsel representing him at the hearing when he entered his guilty plea "did not give [him] any immigration consequences advi[c]e." Had his counsel done so, Pineda "would have not plead [*sic*] guilty

3

to an aggravated felony" but rather would "have opted for other immigration safe alternatives . . . [or] gone to trial." Pineda had "no idea that pleading guilty to [a] [Health and Safety Code section] 11352 [violation] would result in having an aggravated felony conviction with a permanent bar from the United States."

An email from his plea counsel stated that counsel "recall[ed] representing . . . Pineda many years ago" but did not have "any independent recollection of any discussions [counsel] had with . . . Pineda regarding immigration consequences."

The only witness at the hearing was Pineda. He testified he would not have pleaded guilty if he had been informed that doing so "would have resulted in [him] having to go back to Colombia." He understood the district attorney's advisement to mean that he could be deported, but not that he would have no possibility of ever returning to the United States.[3] He also testified, however, that he understood from his plea counsel that his plea deal would not have *any* immigration consequences.[4]

---

[3] Specifically, he testified: "What I understood, that's what the judge usually says, but I was not told—usually if you—if you get deported, sometimes you come back in a year, five years, 10 years, or you can never come back. I was never told . . . [¶] . . . [¶] . . . that I could never come back."

"A: I told him [plea counsel] I wasn't a citizen yet, that I wanted to cooperate and didn't want to be deported, that I wouldn't take anything that had immigration consequences.

"Q: Okay. And what did [plea counsel] say?

"A: He said that he was gonna work out a good deal for me, that—so I wouldn't have consequences.

"Q: Okay. And then you pled guilty to this charge, correct?

"A: Correct.

4

The court denied Pineda's motion. The court found Pineda's testimony "that he would not have entered his plea if he had had a better understanding of the immigration rights" not to be credible, primarily because of "the facts of the case. [¶] This was not a small drug case. This was a very large case. He had nowhere to go. He was caught. He was observed by the police officers. . . . There is no doubt. [¶] . . . [¶] [Pineda] claims that [his attorney didn't sufficiently advise him], and that's where I'm finding him not credible. . . . There [was] nothing to do—any deal he got he would have grabbed. And that's why I don't find his testimony about not being advised credible." The court further stated that Pineda had "waived on the record" any claim that he did not understand the consequences of his plea, because Pineda had acknowledged he understood the prosecutor's advisement.

Pineda timely appealed.

## DISCUSSION

We independently review the denial of a section 1473.7 motion (*People v. Vivar* (2021) 11 Cal.5th 510, 524-528 (*Vivar*)), but "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id.* at pp. 527-528.) A movant seeking relief under section 1473.7 bears the burden of establishing both "(1) he did not meaningfully understand the immigration consequences of the guilty plea, and (2) he was prejudiced thereby (there is a reasonable chance he would

---

"Q: What did [plea counsel] say to you to convince you to plead guilty?

"A: He said it wasn't gonna affect me, that I was gonna get out in two and a half years with good time because I have no record, and I had cooperated in the past. So I went by his word."

have rejected the plea).'" (*People v. Benitez-Torres* (2025) 112 Cal.App.5th 1252, 1255 (*Benitez-Torres*); *People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) At the "heart" of the analysis " 'is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken.' " (*People v. Lopez* (2022) 83 Cal.App.5th 698, 713–714.)

To establish the first requirement, Pineda relies on: (1) His declared and in-court testimony that he did not understand the immigration consequences; (2) His declared and in-court testimony that he had an established life and family in the United States; and (3) His plea counsel's email stating that counsel could not recall what he discussed with Pineda regarding immigration consequences.

We disagree that this evidence, considered in light of the record as a whole, supports the conclusion Pineda advocates. First, the record undermines the credibility of Pineda's testimony about his contemporaneous understanding of the immigration consequences of his plea. That testimony is internally inconsistent; he testified both that he understood from his counsel that his deal would have *no* immigration consequences, and that he understood the district attorney's advisement to mean the deal would have some immigration consequences (deportation), albeit not as severe as ultimately occurred (no possibility of ever returning). Further, Pineda orally acknowledged at the time of his plea that he understood his conviction "*will* have the consequences of deportation, exclusion from admission to the United States, denial of reentry or denial of naturalization pursuant to the laws of the United States." (Italics added.) Pineda correctly notes that such a warning "does not substitute for the advice of counsel, and it is not a categorical bar to relief" (*People v. Manzanilla* (2022) 80

6

Cal.App.5th 891, 906), but we do not consider it for that purpose. Rather, we consider Pineda's *acknowledgment that he understood* the advisement as bearing on the credibility of his testimony to the contrary.

Pineda correctly points out that we should not defer to a court's credibility determination based solely on a court's review of the paper record because an appellate court is equally equipped to assess it. (*Vivar, supra*, 11 Cal.5th at pp. 527-528.) (See, e.g., *Espinoza, supra*, 14 Cal.5th at p. 320 [no deference given to trial court's credibility finding where only evidence consisted of declaration(s) and other documentary evidence].) But here the court did not decide the motion on the paper record alone; Pineda testified, and the court had reason to disbelieve him.

As to plea counsel's email, Pineda is correct that section 1473.7 does not *require* a declaration of counsel attesting to a failure to advise in order to establish a movant's lack of understanding—indeed, such evidence will rarely be available. (See *Espinoza, supra*, 14 Cal.5th at pp. 324-325.) But counsel's declaration neither corroborates nor discredits Pineda's testimony.

Finally, Pineda's ties to the United States, although relevant to the prejudicial error element, have no tendency to make it more or less likely that his counsel sufficiently advised him about the immigration consequences of his plea. Our state Supreme Court has repeatedly held that "[t]ies to the United States are an important factor in evaluating *prejudicial error* under section 1473.7." (*Espinoza, supra*, 11 Cal.5th at p. 321, italics added; accord, *Vivar, supra*, 11 Cal.5th at p. 530.) The court has explained that this is so "because [such ties] shed light on a defendant's immigration priorities. [Citation.] '[W]hen long-standing noncitizen residents of this country are accused of

committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States.' [Citation.] Depending on the strength of a defendant's community ties, 'the prospect of deportation' may be ' "an integral part" ' or ' "the most important part" ' of the defendant's 'calculus in responding to certain criminal charges.' " (*Espinoza, supra*, at p. 321.) To the extent such ties could be relevant to whether Pineda meaningfully understood the consequences of his plea, they alone do not require that we reach a different conclusion than the trial court, who observed Pineda testify, regarding Pineda's credibility.

*Benitez-Torres, supra*, 112 Cal.App.5th 1252, does not aid Pineda. The movant in that case provided "contemporaneous substantiati[ng]" evidence that his counsel had not advised him. (*Id.* at p. 1269.) Namely, his attorney declared that it was his practice to inform noncitizen defendants that they should consult with an immigration attorney—not to inform them of the specific immigration consequences of a plea. (*Id.* at p. 1267.) In addition, evidence suggested the attorney had not thoroughly investigated the case. (*Id.* at pp. 1256, 1260.) Finally, the movant did not orally acknowledge an advisement regarding immigration consequences; he signed a plea form containing such an advisement, "one of a multitude of advisements initialed by [the movant] in the lengthy felony plea form" his counsel presented to him "several minutes before he signed it." (*Id.* at p. 1269.) "Given [counsel's] apparent lack of knowledge about federal immigration laws, and his apparent lack of knowledge regarding his obligations [to inform the movant of the immigration consequences of his plea], [the Court of Appeal concluded] the written advisement in the lengthy plea form [did] not refute [the movant's] testimony that he did not meaningfully

8

understand the immigration consequences of his guilty pleas." (*Ibid.*)

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.